## ROCHESTER RAILWAY COMPANY v. CITY OF ROCHESTER.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 156. Argued January 14, 15, 1907.—Decided March 25, 1907.

Although the obligations of a legislative contract granting immunity from the exercise of governmental authority are protected by the Federal Constitution from impairment by the State, the contract itself is not property which as such can be transferred by the owner to another, but is personal to him with whom it is made and incapable of assignment, unless by the same or a subsequent law the State authorizes or directs such transfer; and so held as to a contract of exemption with a street railway company from assessments for paving between its tracks.

The rule that every doubt is resolved in favor of the continuance of governmental power, and that clear and unmistakable evidence of the intent to part therewith is required, which applies to determining whether a legislative contract of exemption from such power was granted also applies to determining whether its transfer to another was authorized or directed.

A legislative authority to transfer the estate, property, rights, privileges

and franchises of a corporation to another corporation does not authorize the transfer of a legislative contract of immunity from assessment.
Where a corporation incorporates under a general act which creates certain obligations and regulations, it cannot receive by transfer from another corporation an exemption which is inconsistent with its own charter or with the Constitution or laws of the State then applicable, even though under legislative authority the exemption is transferred by words which clearly include it.
Although two corporations may be so united by one of them holding the stock and franchises of the other, that the latter may continue to exist and also to hold an exemption under legislative contract, that is not the case where its stock is exchanged for that of the former and by operation of law it is left without stock, officers, property or franchises, but under such circumstances it is dissolved by operation of the law which brings this condition into existence.
182 N. Y. 116, affirmed.

THE defendant in error brought an action against the plaintiff in error, a street surface railroad corporation, hereinafter called the Rochester Railroad, to recover $18,274.02, the expense of making new pavements of two streets within the space between the tracks, the rails of the tracks and two feet in width outside the tracks of the railroad. The action was brought under section 98 of chapter 39 of the General Laws of New York, which was enacted in 1890, and is as follows:

"Every street surface railroad corporation, so long as it shall continue to use any of its tracks in any street, avenue or public place, in any city or village, shall have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks and two feet in width outside of its tracks, under the supervision of the proper local authorities and whenever required by them to do so and in such manner as they may prescribe. In case of the neglect of any such corporation to make pavements or repairs after the expiration of thirty days' notice to do so the local authorities may make the same at the expense of such corporation. . . ."

The Rochester Railroad was incorporated on February 25, 1890, under a law of New York enacted May 6, 1884. Chap. 252, Laws of New York, 1884. That law authorized the

formation of street surface railroad corporations and provided that they should "have all the powers and privileges granted and be subject to all the liabilities imposed by this act." Among the liabilities was that imposed by section 9 of the act, which is as follows:

"Every such corporation incorporated under, or constructing, extending, or operating a railroad constructed or extended, under the provisions of this act, within the incorporated cities and villages of this State, shall also, whenever and as required and under the supervision of the proper local authorities, have and keep in permanent repair the portion of every street and avenue between its tracks, the rails of its tracks and a space of two feet in width outside and adjoining the outside rails of its track or tracks, so long as it shall continue to use such tracks, so constructed, under the provisions of this act. In case of the neglect of such corporations to make such pavement or repairs the local authorities may make the same at the expense of such corporation after the expiration of thirty days' notice to do so."

Section 18 of the act provides that "all acts and parts of acts, whether general or special, inconsistent with this act are hereby repealed, but nothing in this act shall . . . interfere with or repeal or invalidate any right heretofore acquired under the laws of this State by any horse railroad company or affect or repeal any right of any existing street surface railroad company to construct, extend, operate and maintain its road in accordance with the terms and provisions of its charter and the acts amendatory thereof."

The Rochester Railroad Company was incorporated for the purpose of acquiring the property of the Rochester City and Brighton Railroad Company, hereinafter called the Brighton Railroad. The Brighton Railroad was incorporated March 5, 1868, under a general law of the State of New York. Chap. 140, Laws of 1850. That law contained no provision respecting the repairs of streets, and, differences having arisen between the Brighton Railroad and the city, as to the extent of the

burden of such repairs properly to be borne by the railroad, they joined in an application to the legislature for the enactment of a law which should regulate that and other subjects. Such a law was enacted February 27, 1869; and its fifth section was as follows:

"Said company shall put, keep and maintain the surface of the streets inside the rails of its tracks in good and thorough repair, under the direction of the committee on streets and bridges of the common council of said city of Rochester; but whenever any of said streets are, by ordinance or otherwise, permanently improved, said company shall not be required to make any part or portion of such improvement, or bear any part of the expense thereof, but it shall make its rails in such street or streets conform to the grade thereof."

On the twenty-fifth day of February, 1890, the Brighton Railroad duly executed and delivered a lease of its property, franchises, rights and privileges, for the unexpired term of its charter, to the Rochester Railroad, which accepted the lease and took possession of the property. Subsequently, in the same year the Rochester Railroad acquired the entire capital stock of the Brighton Railroad. The acquisition of stock was in pursuance of the authority contained in chapter 254 of the Laws of New York of 1867, which, as amended by chapter 503 of the Laws of 1879, is as follows:

"Any railroad corporation created by the laws of this State, or its successors, being the lessee of the road of any other railroad corporation, may take a surrender or transfer of the capital stock of the stockholders, or any of them, in the corporation whose road is held under lease, and issue in exchange therefor the like additional amount of its own capital stock at par, or on such other terms and conditions as may be agreed upon between the two corporations; and whenever the greater part of the capital stock of any such corporation shall have been so surrendered or transferred, the directors of the corporation taking such surrender or transfer shall thereafter, on a resolution electing so to do, to be entered

on their minutes, become *ex officio* the directors of the corporation whose road is so held under lease, and shall manage and conduct the affairs thereof, as provided by law; and whenever the whole of the said capital stock shall have been so surrendered or transferred, and a certificate thereof filed in the office of the Secretary of State, under the common seal of the corporation to whom such surrender or transfer shall shall have been made, the estate, property, rights, privileges and franchises of the said corporation whose stock shall have been so surrendered or transferred shall thereupon vest in and be held and enjoyed by the said corporation, to whom such surrender or transfer shall have been made, as fully and entirely, and without change or diminution, as the same were before held and enjoyed, and be managed and controlled by the board of directors of the said corporation to whom such surrender or transfer of the said stock shall have been made, and in the corporate name of such corporation. The rights of any stockholder not so surrendering or transferring his stock shall not be in any way affected hereby, nor shall existing liabilities or the rights of creditors of the corporation, where stock shall have been so surrendered or transferred, be in any way affected or impaired by this act."

Subsequently, the Rochester Railroad duly obtained permission to convert the road into an electric trolley road, expended large sums of money in doing so, and, in the acquisition of the stock of the Brighton Railroad and the conversion of its road into an electric road, relied upon the provisions of the act of 1869 as a contract exempting it, with respect to the streets covered by the tracks of the Brighton Railroad, from other street repairs than those therein described. The city acquiesced in this view until October, 1898, when, upon the suit of an owner of adjoining property, the Court of Appeals held that under section 9 of the Act of 1884 and section 98 of chapter 39 of the General Laws, which were regarded as substantially the same, the Rochester Railroad was bound to bear the expense of a new pavement on

the location acquired from the Brighton Railroad. *Conway* v. *Rochester*, 157 N. Y. 33. Subsequently, the city repaved two streets which were within the location acquired and operated by the Brighton Railroad, prior to the passage of the Act of 1884, and, in obedience to the decision in the *Conway* case, assessed against the Rochester Railroad its share of the ex-; pense of pavement and brought this action to recover the amount of the assessment. It was set up in defense of the action that by the Act of 1869, the State of New York had entered into an inviolable contract with the Brighton Railroad, exempting it from the expense of pavement, that the contract had passed with the property of the Brighton Railroad to the Rochester Railroad and that the assessment was in violation of the Constitution of the United States. The contentions of the Rochester Railroad were denied by the Court of Appeals of New York, 182 N. Y. 116, which held, first, that the statute mentioned did not constitute a contract between the State and the railroad company, and, second, that if it did, the exemption granted by the statute was personal to the Brighton Railroad and did not pass to the Rochester Railroad. The case was remanded to the Supreme Court and a judgment entered pursuant to the remittitur from the Court of Appeals, and by writ of error that judgment is brought here for review.

*Mr. Charles J. Bissell*, with whom *Mr. William C. Trull* and *Mr. Joseph S. Clark* were on the brief, for plaintiff in error:

The general railroad acts, in imposing liability upon the plaintiff in error and the railroad and property of the plaintiff in error for the permanent improvement of the streets mentioned in the complaint, impair the obligation of the contract existing between the plaintiff in error, and the State of New York, and the city of Rochester, relieving plaintiff in error from liability to pay or bear any portion of such expense.

The company accepted the franchise and acted under it for many years, extending its road and complying with all the conditions of the act of 1869. This property right was trans-

ferred to the plaintiff in error, under the merger acts, which accepted the provisions and expended upon the faith thereof nearly four millions of dollars. Under the practical construction placed upon the contract by the state and city authorities, extending from 1869 to 1897, no question was raised that the railroads were exempted from paving between the tracks and two feet outside, in all the streets in which the franchise was obtained and the road constructed, prior to the date of the passage of the General Street Railroad Act of 1890, under which, as construed by its highest court, the State now seeks to strike down benefits annexed to this franchise, and enforce to the letter the burdens imposed by it.

This cannot be done. *Chicago* v. *Sheldon*, 9 Wall. 50; *Detroit* v. *Railway Co.*, 184 U. S. 368; *Cleveland* v. *Railway Co.*, 194 U. S. 517; *Pearsall* v. *Gr. Northern Ry. Co.*, 161 U. S. 646; *L. S. & M. S. R. R. Co.* v. *Smith*, 173 U. S. 694; *New Jersey* v. *Wilson*, 7 Cranch, 164; *Dodge* v. *Woolsey*, 18 How. 331; *McGee* v. *Mathis*, 4 Wall. 143; *Farrington* v. *Tennessee*, 95 U. S. 679; *Asylum* v. *New Orleans*, 105 U. S. 362; *Powers* v. *D. G. H. & M. Ry. Co.*, 201 U. S. 543.

The court erred in holding that even if the act of 1869, together with the ordinances of 1862 and 1869, constituted a contract, it was personal to the Rochester City & Brighton Railroad Company, and did not pass to the plaintiff in error, under the lease, followed by the merger, made pursuant to the provisions of the act of the legislature of the State of New York, chapter 254 of the Laws of 1867 and chapter 503 of the Laws of 1879, the latter act amending the act of 1867.

The merging company, the plaintiff in error, took everything which the lessor had by the same title and to the same extent as any stockholder purchasing the entire stock would take it, only the merging company took title to all the property, privileges, etc., as well as to the stock. That everything was to pass to the merging company was clearly the legislative intent. Each corporation continued in life, the lessor corporation, although it had parted with all its property, as well as the

lessee corporation which acquired it. *In re New York Elec. Co.*, 133 N. Y. 690; *Morgan v. Louisiana*, 93 U. S. 217; *L. & N. R. R. Co. v. Palmes*, 109 U. S. 244; *C. & O. R. R. Co. v. Virginia*, 94 U. S. 718; *C. & O. Ry. Co. v. Miller*, 114 U. S. 176; *Wilson v. Gaines*, 103 U. S. 417; *Shields v. Ohio*, 95 U. S. 319, and other cases discussed and applied.

In the light of all these cases, giving to them all their full force and effect and construing the grant to the Rochester City & Brighton Railroad Company of an exemption from paying for new pavements, as a privilege personal to that company, the same legislature, the same power that conferred the privilege, expressly provided in the Merger Acts of 1867 and 1879, that that particular privilege should pass to any merging company which might thereafter comply with the provisions of the Merger Acts.

The Rochester Railway Company was a merging corporation contemplated by the statutes, and when it acquired the entire capital stock of the Rochester City & Brighton Railroad Company, then held under lease, and filed the certificate required by the Merger Acts, it acquired all the estate, property, rights, privileges and franchises of the Rochester City & Brighton Railroad Company, and now holds them as "fully and entirely and without change or diminution, as the same were before held and enjoyed," and that directly within the meaning and the authority of the several cases examined and digested under this head.

*Mr. William B. Webb* and *Mr. Benjamin B. Cunningham* for defendant in error:

The alleged immunity from taxation being personal to the Rochester City & Brighton Railroad Company could not be acquired by the plaintiff in error by lease or purchase of said company's property and franchises, unless with the permission of the legislature of the State of New York. The decision of the state court, that the state statutes did not permit this immunity to pass to plaintiff in error, was based upon the con-

struction of state statutes, and no Federal question is presented. However, the decision of the state court accords with the construction placed by this court upon similar statutes.

The decision of the state court that the alleged immunity was personal and did not pass to the plaintiff in error, is correct, and this court will agree with a state court in its construction of a state statute, whenever the question decided is balanced with doubt. *Mead* v. *Portland,* 200 U. S. 148; *Water Works Co.* v. *Tampa,* 199 U. S. 241.

The settled doctrine of this court is that a grant to a corporation of the franchises, rights and privileges of a former corporation does not operate to transfer an immunity from taxation. *Gulf &c. Ry. Co.* v. *Hewes,* 183 U. S. 66; *Phœnix Fire & Marine Ins. Co.* v. *Tennessee,* 161 U. S. 174; *Wilmington &c. R. R. Co.* v. *Alsbrook,* 146 U. S. 279; *Pickard* v. *East Tenn. &c. R. R. Co.,* 130 U. S. 637; *Chesapeake & Ohio R. R. Co.* v. *Miller,* 114 U. S. 176.

Plaintiff in error was incorporated under an act which provides that it shall be subject to all liabilities imposed thereby, one of which liabilities is that it shall pave between its tracks and two feet outside thereof. It acquired its corporate life under this act, and accepted its corporate capacity and leased the property and franchises of the Rochester City & Brighton Company subject to the provisions and liabilities of the act under which it was incorporated.

The act of 1884, under which plaintiff in error was incorporated, modified ch. 503 of the Laws of 1879, so as to forbid a corporation formed under the Laws of 1884 to acquire by lease or purchase any immunity from paying the costs of paving between the tracks and two feet outside of the tracks of the railroad operated by it.

A corporation is bound by the provisions of the act under which it is incorporated, and that when it has taken advantage of the provisions of a statute granting it corporate capacity, it assumes all liabilities arising therefrom. *Grand Rapids & Indiana Ry. Co.* v. *Osborn,* 193 U. S. 17.

Mr. Justice Moody, after making the foregoing statement, delivered the opinion of the court.

By the judgment of the highest court of the State of New York, the city of Rochester was allowed to recover from the Rochester Railroad, a street surface railroad corporation, the cost of laying new pavements on the parts of two streets which lay between the tracks, the rails of the tracks and two feet outside of the tracks of the railroad. This recovery was had under a statute of New York, which required such railroads to keep that part of the street over which their tracks ran in permanent repair. The requirement of permanent repair includes the duty of laying new pavements. *Conway* v. *Rochester*, 157 N. Y. 33.

The Rochester Railroad, not denying its liability in ordinary cases to bear the expense of paving, asserts that, with respect to the two streets in question, it was exempted from that burden by contract with the State of New York, made with its predecessor in title, the Brighton Railroad, and transferred to it with the title to the property of that railroad. The contract relied upon is found in a law enacted in 1869, for the benefit of the Brighton Railroad, which relieved that road from the burden of pavement of any part of the streets in which its tracks were situated. The Rochester Railroad claims that the law of New York, so far as that law imposes upon it the cost of the pavement of the streets in question, was in violation of that provision of the Constitution of the United States which forbids a State to pass any law impairing the obligation of contracts.

The Brighton Railroad was incorporated in 1862, under the general law of 1850, which contained no provision with respect to the railroad's share of street repairs. Until the enactment of the law of 1884, under which the Rochester Railroad was subsequently incorporated, there was no general law regulating the apportionment between street railroads and municipalities of the expense of such repairs, and the

question was determined in individual cases either by agreement or a special law. Differences having arisen between the Brighton Railroad and the city of Rochester as to the share of the expense of street repair which ought to be borne by the railroad, they joined in a request for legislation which would settle this and other disagreements. In response to that request the law of 1869 was enacted. The fifth section of the law, after providing that the railroad should put and keep the surface and street inside of the rails of its tracks in repair, enacts that: "Whenever any of said streets are by ordinance or otherwise permanently improved said company shall not be required to make any part or portion of such improvement or bear any part of the expense thereof."

This law obviously, as held by the Court of Appeals, exempted the railroad from the expense of new pavements, which is the expense sought to be recovered in this action. This was the effect conceded to the statute by the city for the whole time during which the railroad property was owned and operated by the Brighton Railroad, and even after it parted with the property, and until the decision in *Conway* v. *Rochester*, 157 N. Y. 33, in 1898. Whether this statute was a contract between the State of New York and the Brighton Railroad inviolable by the Federal Constitution, and if so, whether its benefits have been waived or it has been lawfully modified or repealed by virtue of the powers reserved by the constitution or laws of New York, are questions which have been much argued at the bar. We do not deem it necessary in this case to decide those questions, and therefore put out of view many facts found in the record which were deemed by both parties to be relevant to them. We assume, for the purpose of our decision, that there was a contract exempting the Brighton Railroad from the expense of street pavements, and that the contract could not constitutionally be impaired by the State of New York, and that its benefits have not been waived.

It becomes therefore necessary to inquire whether the

contract has been transferred with the property of the Brighton Railroad to the Rochester Railroad, the plaintiff in error.

The Rochester Railroad was incorporated for the purpose of acquiring the property of the Brighton Railroad, which was accomplished by a lease of the property, franchises, rights and privileges of the Brighton Railroad, followed by the purchase of its capital stock. This was done under the authority of a statute, which provided that a railroad corporation, being the lessee of the property of another railroad corporation, might acquire the whole of the capital stock of the latter, and in such a case its "estate, property, rights, privileges, and franchises should vest in and be held and enjoyed by" the purchasing corporation. It is contended that the effect of the transfer under this law is to vest in the Rochester Railroad the exemption from the expense of street pavement which the Brighton Railroad enjoyed through the contract with the State of New York. This contention presents the question to be decided.

This court has frequently had occasion to decide whether an immunity from the exercise of governmental power which has been granted by contract to one, has by legislative authority been vested in or transferred to another, and in the decisions certain general principles, which control in the determination of the case at bar, have been established. Although the obligations of such a contract are protected by the Federal Constitution from impairment by the State, the contract itself is not property which, as such, can be transferred by the owner to another, because, being personal to him with whom it was made, it is incapable of assignment. The person with whom the contract is made by the State may continue to enjoy its benefits unmolested as long as he chooses, but there his rights end, and he cannot by any form of conveyance transmit the contract or its benefits, to a successor. *Morgan* v. *Louisiana,* 93 U. S. 217; *Wilson* v. *Gaines,* 103 U. S. 417; *Louisville & Nashville R. R. Co.* v. *Palmes,* 109 U. S. 244; *Picard* v. *Tennessee &c.,* 130 U. S. 637; *St.*

*Louis &c.. Co.* v. *Gill*, 156 U. S. 649; *Norfolk & Western Railroad* v. *Pendleton*, 156 U. S. 667. But the State, by virtue of the same power which created the original contract of exemption, may either by the same law, or by subsequent laws, authorize or direct the transfer of the exemption to a successor in title. In that case the exemption is taken not by reason of the inherent right of the original holder to assign it, but by the action of the State in authorizing or directing its transfer. As in determining whether a contract of exemption from a governmental power was granted, so in determining whether its transfer to another was authorized or directed every doubt is resolved in favor of the continuance of the governmental power and clear and unmistakable evidence of the intent to part with it is required.

Keeping these fundamental principles steadily in mind, we proceed to inquire whether the State of New York has authorized or directed the transfer from the Brighton Railroad to the Rochester Railroad of the contract of exemption. A legislative authorization of the transfer of "the property and franchises," *Morgan* v. *Louisiana, ub. sup.; Picard* v. *Tennessee &c. Co., ub. sup.;* of "the property," *Wilson* v. *Gaines, ub. sup.; Louisville & Nashville R. R. ub. sup.;* of "the charter and works," *Memphis &c. Railroad Co.* v. *Commissioners,* 112 U. S. 609; or of "the rights of franchise and property," *Norfolk & Western Railroad Co.* v. *Pendleton, ub. sup.,* is not sufficient to include an exemption from the taxing or other power of the State, and it cannot be contended that the word "estate" has any larger meaning. It is, however, argued that the word "privileges" is sufficiently broad to embrace within its meaning such an exemption, and that when it is added to the other words the legislative intent to transfer the exemption is clearly manifested, and that the words of the law under consideration, "the estate, property, rights, privileges and franchises," indicate the purpose to vest in the purchasing corporation every asset of the selling corporation which is of conceivable value. There is authority

sustaining this position, which cannot be set aside without examination.

In the case of *Humphrey* v. *Pegues*, 16 Wall. 244, it appeared that the charter of the Northeastern Railroad Company granted by the State of South Carolina originally contained no exemption from taxation, but that by amendment to the charter some years later the real estate and stock of the company were exempted from all taxation during the continuance of its charter. Subsequently, the legislature granted the charter of the Cheraw and Darlington Railroad Company, and provided that "all the powers, rights and privileges granted by the charter of the Northeastern Railroad Company are hereby granted to the Cheraw and Darlington Railroad Company." The State of South Carolina attempted to tax the stock and property of the Cheraw and Darlington Railroad Company, and the validity of that taxation was the question in the case. The court held that the powers, rights and privileges granted to the Cheraw and Darlington Railroad Company were those contained in the amendment of the charter, as well as those contained in the original charter, and said, by Mr. Justice Hunt: "All the 'privileges,' as well as the powers and rights, of the prior company were granted to the latter. A more important or more comprehensive privilege than a perpetual immunity from taxation can scarcely be imagined. It contains the essential idea of a peculiar benefit or advantage, of a special exemption from a burden falling upon others." Upon this reasoning it was held that the stock and real estate of the Cheraw and Darlington Railroad Company were exempt from taxation. See *Gunter* v. *Atlantic Coast Line*, 200 U. S. 273.

In *Chesapeake & Ohio Railroad* v. *Virginia*, 94 U. S. 718, it was said that an act conferring upon a railroad corporation "the benefits of the charter" of another corporation which had an immunity from taxation, and "the rights, privileges, franchises and property" of another corporation, which when formed would have the "rights, privileges and franchises

and property" of the corporation holding the immunity, was sufficient to transfer the immunity from taxation. But this expression of opinion was unnecessary to the decision of the case, which merely decided that where a railroad corporation acquired the property of another railroad corporation, to which was attached an immunity from taxation, that immunity did not extend beyond the property thus acquired. In *Southwestern Railroad Company* v. *Georgia*, 92 U. S. 665, where a statute allowed the Muscogee Railroad to unite with the Southwestern Railroad into one company, under the charter of the latter, and it was provided that "all the rights, privileges and property [of the Muscogee Railroad Company] shall be part and parcel of the Southwestern Railroad," it was held that the immunity from taxation enjoyed by the Muscogee Railroad passed with its property to the Southwestern Railroad.

In *Tennessee* v. *Whitworth*, 117 U. S. 139, it was held that a statute conferring upon a railroad corporation "all the rights, powers and privileges" of another railroad corporation, and "all the powers and privileges" of a third railroad corporation included the immunities from taxation enjoyed respectively by the latter corporations, the ground of the decision being that an exemption from taxation is, in the common acceptation of the term, a privilege.

If the authority of these four cases, supported by some *dicta* which need not be cited, remained unimpaired, it would justify the opinion that a legislative transfer of the "privileges" of a corporation includes an exemption from the taxing or other governmental power granted by a contract with the State. But other and later cases have essentially modified the rule which may be deduced from them.

In the case of the *Chesapeake & Ohio Railroad Company* v. *Miller*, 114 U. S. 176, it was held that the foreclosure of a mortgage on railroad property under the provisions of a statute which authorized the purchaser under a foreclosure sale to become a corporation, and provided that it should

"succeed to all such franchises, rights and privileges" as were possessed by the mortgagor company, did not vest in the purchasing corporation an immunity from taxation.

In *Picard v. East Tennessee, Virginia & Georgia Railroad Company,* 130 U. S. 637, Mr. Justice Field, in delivering the opinion of the court, said:

"The later, and, we think, the better opinion, is that unless other provisions remove all doubt of the intention of the legislature to include the immunity in the term 'privileges,' it will not be so construed. It can have its full force by confining it to other grants to the corporation."

In *Wilmington & Weldon Railroad Company* v. *Alsbrook,* 146 U. S. 279, Mr. Chief Justice Fuller, in delivering the opinion of the court, said on page 297: "We do not deny that exemption from taxation may be construed as included in the word 'privileges,' if there are other provisions removing all doubt of the intention of the legislature in that respect."

In *Keokuk & Western R. R. Co.* v. *Missouri,* 152 U. S. 301, Mr. Justice Brown, in delivering the opinion of the court, said: "Whether under the name 'franchises and privileges' an immunity from taxation would pass to the new company may admit of some doubt, in view of the decisions of this court, which, upon this point, are not easy to be reconciled."

These conflicting views were before the court in *Phenix Fire & Marine Insurance Company* v. *Tennessee,* 161 U. S. 174. The plaintiff in error in that case claimed to have an immunity from taxation by virtue of a provision in its charter granting it "all the rights and privileges" of the De Soto Insurance Company, which had an immunity from taxation by virtue of a provision in its charter granting it "all the rights, privileges and immunities" of the Bluff City Insurance Company, whose charter contained an expressed immunity from taxation. Mr. Justice Peckham, in delivering the opinion of the court, stated the question for decision in these words: "Is immunity from taxation granted to plaintiff in error under language which grants 'all the rights and privileges'

of a company which has such immunity? " Much significance
was given to the fact that the word "immunity," which
clearly includes an exemption, was used in the charter of the
De Soto company and not used in the charter of the plaintiff
in error, granted seven years later. But the decision was
not rested on this circumstance, although the omission was
thought to cast a grave doubt upon the plaintiff's claim.
The opinion reviews all the cases, cites the foregoing quota-
tions from the opinions of Mr. Justice Brown, Mr. Justice Field
and of the Chief Justice, and, after saying "There must be
other language than the mere word 'privilege' or other pro-
visions in the statute removing all doubt as to the intention
of the legislature before the exemption will be admitted,"
concludes that "If this were an original question we should
have no hesitation in holding that the plaintiff in error did
not acquire the exemption from taxation claimed by it, and
we think at the present time the weight of authority, as well
as the better opinion, is in favor of the same conclusion which
we should otherwise reach."

In *Gulf & Ship Island Railroad Company* v. *Hewes*, 183
U. S. 66, Mr. Justice Brown, in delivering the opinion of the
court, said, citing this case as authority: "The better opinion
is that a subrogation to the 'rights and privileges' of a former
corporation does not include an immunity from taxation."

We think it is now the rule, notwithstanding earlier de-
cisions and *dicta* to the contrary, that a statute authorizing
or directing the grant or transfer of the "privileges" of a
corporation, which enjoys immunity from taxation or regula-
tion, should not be interpreted as including that immunity.
We, therefore, conclude that the words "the estate, property,
rights, privileges and franchises," did not embrace within
their meaning the immunity from the burden of paving en-
joyed by the Brighton Railroad Company. Nor is there
anything in this, or any other statute, which tends to show
that the legislature used the words with any larger meaning
than they would have standing alone. The meaning is not

enlarged, as faintly suggested, by the expression in the statute that they are to be held by the successor "fully and entirely and without change and diminution," words of unnecessary emphasis, without which all included in "estate, property, rights, privileges and franchises" would pass, and with which nothing more could pass. On the contrary, it appears, as clearly as it did in the *Phenix Fire Insurance Co. case, supra,* that the legislature intended to use the words "rights, franchises and privileges" in the restricted sense. The law under which this transfer was made was enacted in 1867 and amended in 1879. In 1869 an act was passed authorizing the merger and consolidation of railroad corporations, chap. 917, Laws of 1869, which provided that upon the consolidation "all and singular the rights, privileges, *exemptions* and franchises should be transferred to the new corporation." In 1876 an act was passed, chap. 446, Laws of 1876, which authorized the purchasers of the rights, privileges and franchises of railroad corporations (except street railroad corporations) under a foreclosure sale to become a corporation, and thereupon have "all the franchises, rights, powers, privileges and *immunities*" of the corporation whose property was sold. The omission in the statute under consideration of the words "exemptions" or "immunities," either of which would be apt to transfer the immunity claimed, is significant, in view of the fact that each of these words was employed by the legislature about the same time in other statutes dealing with the transfer of corporate property, and raises a doubt of the intention of the legislature, which in cases of the interpretation of a statute claimed to divest the State of a governmental power is equivalent to a denial.

The conclusion that the exemption of the Brighton Railroad did not accompany the transfer of its property to the Rochester Railroad is reached by another and entirely independent course of reasoning, based upon a consideration of the law under which the Rochester Railroad was incorporated. That was the general incorporation law of 1884. Every corporation

incorporated under it was made "subject to all the liabilities imposed by the act," (§ 1) and directed to keep the street surface about and between its tracks "in permanent repair," (§ 9) which, as held by the state court, includes the duty of laying such pavement as is in controversy here. We follow the construction by that court of § 9, so fɑ.· as it holds that that section applies to all tracks, whether constructed under this law or any other law, owned and operated by a corporation incorporated under it. Whether the section applies, or constitutionally can apply, to a corporation not deriving its powers from the act of 1884, in respect of tracks not constructed under its provisions, it is not necessary for us to consider. There may have been a saving of the rights of such corporations under § 18. That question would be presented if the Brighton Railroad, instead of a successor in title, were claiming an exemption. Here a corporation, deriving its right to exist under the act of 1884, is asserting an exemption from a duty imposed upon it by the law which created it. The authorities are numerous and conclusive that no corporation can receive by transfer from another an exemption from taxation or governmental regulation which is inconsistent with its own charter or with the constitution or laws of the State then applicable, and this is true, even though, under legislative authority, the exemption is transferred by words which clearly include it. *Trask* v. *Maguire*, 18 Wall. 391; *Shields* v. *Ohio*, 95 U. S. 319; *Maine Central R. R.* v. *Maine*, 96 U. S. 499; *Railroad Co.* v. *Georgia*, 98 U. S. 359; *Louisville & Nashville R. R. Co.* v. *Palmes*, 109 U. S. 244; *Memphis &c. R. R.* v. *Commissioners*, 112 U. S. 609; *St. Louis &c. R. R.* v. *Berry*, 113 U. S. 465; *Keokuk &c. R. R.* v. *Missouri*, 152 U. S. 301; *Norfolk & Western R. R.* v. *Pendleton*, 156 U. S. 667; *Yazoo &c. R. R.* v. *Adams*, 180 U. S. 1; *Grand Rapids &c. R. R.* v. *Osborn*, 193 U. S. 17; *San Antonio Traction Co.* v. *Altgelt*, 200 U. S. 304.

The principle governing these decisions, so plain that it needs no reasoning to support it, is that those who seek and

obtain the benefit of a charter of incorporation must take the benefit under the conditions and with the burdens prescribed by the laws then in force, whether written in the constitution, in general laws or in the charter itself. The Rochester Railroad, therefore, having accepted its charter under a law which imposed upon it the duty of laying pavements is bound to perform that duty, even in respect of tracks, which, while owned by a predecessor in title, would have been exempt.

The foregoing considerations would be conclusive of the case were it not that the plaintiff in error takes another position, which, if tenable, would avoid the result reached by either course of reasoning. It is insisted that this is not a case of transfer of an exemption; that the rules governing transfer are not applicable here; that the Brighton Railroad has not ceased to exist as a corporation; that it has been merely joined by merger with the Rochester Railroad, which controls it by stock holdings, and operates it by virtue of its franchises; and that, therefore, the Rochester Railroad may claim and enjoy the exemption of the Brighton Railroad in its behalf in respect of its property. In support of this view counsel cite *Tomlinson* v. *Branch,* 15 Wall. 460; *Central Railroad* v. *Georgia,* 92 U. S. 665; *Tennessee* v. *Whitworth, ub. sup.* These cases hold that where corporations are united in such manner that one continues to exist as a corporation, owning and operating its property, by virtue of its own charter, the corporation thus continuing to exist still holds its immunities and exemptions in respect of the property to which they apply. But the cases have no application here. It may well be that a proceeding for condemnation of property, begun by the Brighton Railroad, would not abate by reason of its consolidation with the Rochester Railroad, as held in 43 State Reporter, 651, affirmed 133 N. Y. 690. An examination, however, of the statute under which the union of the two corporations was made, and the transactions by which the union was accomplished, shows that the Brighton

Railroad has ceased to exist as a corporation. The Rochester Railroad first took a lease of the Brighton Railroad, apparently for the purpose of bringing itself within the provisions of the act of 1879. Then all the stock of the latter corporation was acquired by exchange of shares of stock of the former corporation. Then a certificate of the transfer of stock was filed with the Secretary of State. Thereupon, by operation of the law, the "estate, property, rights, privileges and franchises" of the Brighton Railroad vested in the Rochester Railroad, to be thereafter controlled by the Rochester Railroad in its own corporate name. The law does not expressly dissolve the selling corporation, but it leaves it without stock, officers, property or franchises. A corporation without shareholders, without officers to manage its business, without property with which to do business, and without the right lawfully to do business, is dissolved by the operation of the law which brings this condition into existence. *Maine Central Railroad* v. *Maine, ub. sup.*; *Keokuk &c. Railroad* v. *Missouri, ub. sup.; Yazoo &c. Railroad, ub. sup.*

The judgment of the Supreme Court of New York is, therefore,

*Affirmed.*

Mr. Justice White concurs in the result.