[Civil No. 1032.   Filed March 27, 1908.]

[95 Pac. 187.]

GRAND CANYON RAILWAY COMPANY, a Corporation, Plaintiff and Appellant, v. J. R. TREAT, as Treasurer and Ex Officio Tax Collector of the County of Coconino, Territory of Arizona, and the COUNTY OF COCONINO, TERRITORY OF ARIZONA, Defendants and Appellees.

1. TAXATION—EXEMPTIONS—STATUTORY PROVISIONS—CONSTRUCTION.— Section 8, Act No. 3, page 6, Nineteenth Legislature, provides that nothing contained in the act shall be construed to give to any corporation created under it any exemption from taxation created by any existing or future exemption laws of the territory. *Held;* that the purport of the act was that a corporation created pursuant thereto should not be deemed to acquire by reason of any of the terms of the act an exemption from taxation, and further, that it should not be held that property acquired by it should be exempt from taxation because, by operation of an existing or subsequent exemption act, it was exempt under its former ownership, or because, by operation of such exemption act, its former owner was exempt, and it was not intended to prevent future legislatures from expressly permitting a tax exemption to accompany the exempt property to a successor in interest, or to be availed of by the successor of an exempt owner.

2. SAME.—The same meaning must be given to the saving clause of section 2, Act No. 28, page 66, Nineteenth Legislature, providing that a purchaser of a railroad sold by virtue of a judgment or decree of court shall be vested with all the property purchased, together with all rights and exemptions appertaining thereto, save and except only

the exemption from taxation which now exists or may hereafter be given under existing or future exemption laws of the territory in reference to inducing the building of new roads.

3. SAME.—Act No. 68, page 79, Twentieth Legislature (Act March 16, 1899), provides that for the purpose of inducing and encouraging the construction of railroads the capital stock, franchises, right of way, superstructures, and all other property used or necessary in the construction and operation of railroads to be conducted as common carriers, and whether owned or operated by a person or persons, association or railway corporation, their or its successors or assigns, shall be exempt from taxation for ten years from the date of the passage of the act. *Held,* that such act perpetuated the exemption unto the successors of the original owner of a railroad constructed pursuant to the act.

4. SAME—"SUCCESSOR."—A corporation organized by purchasers at a mortgage foreclosure sale of a railroad constructed pursuant to Act No. 68, page 79, Twentieth Legislature, exempting such railroads and their "successors" from taxation, is the successor of the company commencing the construction of the railroad within the meaning of the act, so as to be entitled to the exemption provided for therein.

APPEAL from a judgment of the District Court of the Fourth Judicial District, in and for the County of Coconino. Richard E. Sloan, Judge. Reversed and remanded.

### STATEMENT OF FACTS BY THE COURT.

The Santa Fe and Grand Canyon Railroad Company, theretofore duly incorporated under the laws of Arizona for the purpose and with the power, among others, of constructing, maintaining and operating a railroad from the town of Williams in Coconino county to the rim of the grand canyon of the Colorado river in Arizona, distant therefrom about seventy miles, for the carriage of passengers and freight as a common carrier, filed with the secretary of the territory, on August 19, 1899, a written statement designating the general course and terminal points of the railroad which it proposed to construct. The entire line of said railroad was located upon the ground by a survey, and the location designated and fixed by the survey stakes were duly adopted as the definite line of location of said road by the board of directors of said company on October 7, 1899. Thereafter, and within six months after the written statement above mentioned was filed with the secretary of the territory, the work of constructing said road was in good faith commenced on October 30, 1899, and

a written statement setting forth the date and place of such construction was filed with the secretary of the territory. Construction was diligently prosecuted thereafter, and before October 22, 1900, the company had completed fifty-six and thirty-four hundredths miles of the road, and on December 22, 1900, filed with said secretary of the territory a plat of the road which it had thus constructed. All of these things, except the incorporation of the company, were done in compliance with Act No. 68, page 79, of the Twentieth Legislative Assembly of the territory of Arizona, approved March 16, 1899, and entitled "An act to induce and encourage the construction of railroads within this territory." Thereafter, in a suit brought for the foreclosure of a mortgage securing the corporate indebtedness of the company, the district court of Coconino county, on June 8, 1901, issued a decree directing a special master to sell all of the property, rights, franchises and privileges of the said company, including all exemptions from taxation owned or possessed by it, or which it or its assigns may hereafter acquire, own, or possess through or under the charter of said railroad company. Under this decree the special master, on July 18, 1901, sold all of said property and other things above mentioned to E. D. Kenna, Byron L. Smith, and James H. Eckels, which sale was, on July 20, 1901, confirmed, and the property and things sold were thereupon delivered into the possession of the purchasers. Said purchasers, thereafter associating with themselves C. L. Sterry and T. J. Norton, organized the appellant corporation, the articles of incorporation of which were filed with the secretary of the territory on August 10, 1901. Appellant was formed for the purpose and with the power, among others, to acquire, own, maintain and operate the railroad sold as aforesaid, and to complete the construction of the same upon the route and right of way of the Santa Fe and Grand Canyon Railroad Company theretofore surveyed, and to acquire, own, use and enjoy the franchises, rights, privileges, immunities and exemptions acquired, held, and enjoyed by that company. About August 16, 1901, a deed conveying all of the property, rights, privileges, franchises, and exemptions sold to and purchased by the said E. D. Kenna, Byron L. Smith, and James H. Eckels at the sale under foreclosure above mentioned to the appellant herein, theretofore executed and de-

livered by the said purchasers, was placed of record on page 508, in book 13 of Deeds, of the public records of Coconino county. Appellant thereafter continued the construction of said railroad upon the location thereof which had been made by its predecessor, and completed the work on September 12, 1901. Thereafter, on November 8, 1901, the appellant filed with the secretary of the territory a map showing the portion of said road constructed during the year ending October 22, 1901, amounting to ten and seven hundredths miles. During the month of September, 1901, appellant located at its northern terminus an area of twenty acres for station grounds, and filed a map thereof with the Secretary of the Interior, which was, on August 18, 1905, duly approved by said Secretary. Appellant thereafter, in order to care for its passengers, erected upon said station grounds hotels and appurtenances, and has at all times since maintained on said grounds hotels, with electric and power plant to supply light, heat and power for said hotels and its depot and other buildings as situated on said station grounds, and used by it in its business. In the year 1906 the assessor of Coconino county and the board of equalization of the territory levied and assessed upon the aforesaid property of the appellant county and territorial taxes in the sum of $11,975.63. Against this assessment the Grand Canyon Railway Company entered a formal protest before the territorial board of equalization, in which it claimed that it was organized and succeeded to the property of the Santa Fe and Grand Canyon Company under the provisions of, and by compliance with, the requirements of Act No. 3, page 5, of the Session Laws of 1897; that the property taxed was entitled to exemption from taxation by virtue of the terms of section 1, Act No. 68, page 79, of the Session Laws of 1899, whether in the ownership and possession of the Santa Fe and Grand Canyon Company, or of it (the Grand Canyon Railway Company), as the successor of the former corporation. Upon the refusal of the board of equalization to vacate or set aside the assessment and the listing of the tax for collection the Grand Canyon Railway Company brought this action in the district court to restrain the collection of such taxes, on the ground that such property was exempt from taxation, and set forth in its complaint the facts as above stated; and, by amendment to said complaint, in

addition thereto pleaded *in extenso* the certificate of incorporation of the said company. To the amended complaint the trial court sustained a general demurrer, without leave to amend, and entered judgment for the defendant in accordance therewith, from which judgment and ruling an appeal has been taken to this court. The appellant has presented its assignment of errors wherein it asserts that the court erred in sustaining the demurrer to appellant's amended complaint, and that the court erred in awarding judgment upon such order in favor of appellees, for, upon the facts stated in the amended complaint and admitted by the general demurrer thereto, the property mentioned in the amended complaint was and is exempt from taxation.

T. J. Norton, Paul Burks, and U. T. Clotfelter, for Appellant.

By the act of March 16, 1899, of the legislature of Arizona, the appellant's predecessor acquired an exemption to which the appellant became entitled by reason of its purchase of the properties, rights, franchises, privileges and immunities of "The Santa Fe and Grand Canyon Railroad Company," the appellant's predecessor in interest. *Humphry* v. *Pegues,* 83 U. S. (16 Wall.) 244, 21 L. Ed. 326; *Philadelphia etc. R. Co.* v. *Maryland,* 51 U. S. (10 How.) 376, 393, 13 L. Ed. 461; *Chesapeake etc. R. Co.* v. *Virginia,* 94 U. S. 718, 24 L. Ed. 310; *Southwestern R. Co.* v. *Georgia,* 92 U. S. 676, 23 L. Ed. 762; *Tennessee* v. *Whitworth,* 117 U. S. 139, 6 Sup. Ct. 649, 29 L. Ed. 833; *Buchanan* v. *Knoxville & O. R. Co.,* 71 Fed. 324, 18 C. C. A. 122; *Bancroft* v. *Wicomico County Commrs.,* 121 Fed. 878.

A thorough examination of the decisions of the federal courts is authority for the statement that appellant holds its property exempt from taxation, unless there may be something to the contrary in Acts 3 and 28 of the Session Laws of 1897, or in Act 68 of the Session Laws of 1899.

The exemption of the property is an appurtenant of the property which follows it everywhere. *New Jersey* v. *Wilson,* 7 Cranch, 164, 3 L. Ed. 303.

Whenever a general statute and a later special statute exist relative to the same subject, the latter must be regarded as an exception to the former. *In re City Trust Co.,* 121 Fed.

706, 708, 58 C. C. A. 126; *State* v. *Routh,* 61 Minn. 205, 63
N. W. 621; *In re Murray Hill Bank,* 153 N. Y. 199, 47 N. E.
298; *Dewey* v. *Manufacturing Co.,* 42 Mich. 399, 4 N. W. 179.

Henry F. Ashurts, E. S. Clark, and Edward M. Doe, for
Appellees.

The mere use of the word "immunities" in the provisions
of the act mentioned does not show the intention of the legisla-
ture to include the exemption from taxation in the property
conveyed to new corporations in view of the expressed ex-
emption contained in this statute in section 8 of the act of
February 8, 1897.

DOAN, J.—This appeal is prosecuted upon the theory that
section 1 of Act of March 16, 1899, page 79, No. 68, which pro-
vides "that for the purpose of inducing and encouraging the
construction of railroads, other than street and electric rail-
roads, within this territory, the capital stock, franchise, right
of way, superstructures, betterments, telegraph lines, and all
other real, personal and mixed property used or necessary in
the construction and operation of railroads to be conducted
as common carriers of freight and passenger, other than
street and electric railroads, hereafter constructed in accord-
ance with the provisions of this act, and whether owned or
operated by a person or persons, association or railway cor-
poration, his, their or its successors or assigns, be and the same
is hereby declared to be exempt from any and all manner of
taxation for and during the period of ten years from and
after the date of the passage of this act," established a valid
exemption from taxation for the stock, franchises, right of
way, superstructures, and all other real, personal and mixed
property used or necessary in the construction and operation
of railroads constructed in accordance with the provisions of
that act, whether owned and operated by the original associa-
tions or corporations that constructed said roads and created
or established such other property in compliance with the
provisions of said act, or owned and operated by the suc-
cessors of such associations or corporations.

It is contended by the appellees that appellant, having ac-
quired the property by virtue of the provisions of Act No.
3, page 5, of the Nineteenth Legislative Assembly, is subject

to the limitations of the said act, and that section 8, page 6,
thereof, which provides, "nothing in this act contained shall
be deemed or construed to give to any corporation created
under it any exemption from taxation created by any existing
or future exemption laws of the territory of Arizona," pre-
vents the appellant from claiming for the property thus ac-
quired any exemption from taxation. In determining the
question whether upon the facts alleged in the amended com-
plaint, and by the general demurrer thereto conceded, the
property upon which the tax was levied was and is exempt
from taxation in the hands of the appellant, as the successor
of the original owner, we first consider whether such exemp-
tion is the grant of Act No. 68, page 79, of the Twentieth
Legislature, or of Act No. 3, page 5, of the Nineteenth Legisla-
ture; second, if the exemption is conferred by the grant of
Act No. 68, page 79, Laws 1899, independent of Act No. 3,
page 5, Laws 1897, is there, nevertheless, such a limitation
placed upon the appellant corporation by the terms of either
its certificate of incorporation or the law which authorizes
its incorporation and its acquisition of this property (being
Act No. 3, page 5, *supra*) as will prevent that corporation
from enjoying the exemption or prevent the property from
being exempted from taxation by reason of said corporation
being authorized by the enabling legislation contained in said
Act No. 3, page 5, Laws 1897, to succeed to such property
and to hold and operate it? The language of Act No. 68,
page 79, Laws 1899, clearly establishes that the exemption
claimed is granted by that act, and it necessarily follows that,
unless there is such limitation placed upon the appellant
corporation, either by its articles of incorporation, or by Act
No. 3, page 5, Laws 1897, as to prevent its availing itself of
such exemption, the same is still in force. Exemptions from
taxation, so far as we have examined the cases cited, are
found to be divided into two classes: Exemptions of one class,
by their terms, are personal, being such as have been by legis-
lative enactment granted either directly to persons or corpo-
rations that are named in the acts thus granting them, or
granted to such persons or corporations as may comply with
the requirements of such legislative enactment, and thus
bring themselves within the granting clause thereof, and by
so doing make themselves the beneficiaries of such granting

clause. Exemptions of the other class might be called "impersonal," and the grants thereof might be termed "legislation in rem," and are those cases in which the exemption is granted directly to the property in question, and in which the granting clause generally provides that the property of the classes designated, when acquired or created, in compliance with the provisions of such enabling legislation, should be exempt from taxation. This latter class of legislation can directly exempt from taxation such property while owned or controlled by the persons or corporations thus acquiring it or bringing it into existence, in which cases the exemption will cease when the property passes out of the ownership or control of those thus acquiring or creating it, or the legislative act may either provide that such exemption shall attach to the property after passing from the ownership and control of those who created it, in compliance with the terms of such beneficial legislation, into that of their successors or assigns, or may simply declare that such property shall be exempt from taxation, without restricting the ownership or control, and leave it to the law to continue the exemption after transfer of title as an appurtenant to the property.

In regard to the acquisition by a successor of an exemption granted to a corporation personally (being the first class mentioned) the United States supreme court has said in a recent case: "The state, by virtue of the same power which created the original contract of exemption, may, either by the same law or by subsequent laws, authorize or direct the transfer of the exemption to a successor in title. In that case the exemption is taken, not by reason of the inherent right of the original holder to assign it, but by the action of the state, authorizing or directing its transfer. As in determining whether a contract of exemption from a governmental power was granted, so in determining whether its transfer to another was authorized or directed, every doubt is resolved in favor of the continuance of the governmental power, and clear and unmistakable evidence of the intent to part with it is required." *Rochester Ry. Co.* v. *Rochester,* 205 U. S. 236, 27 Sup. Ct. 469, 51 L. Ed. 784. The case at bar presents an instance in which the grant is not personal, but is made direct to the property. The Territory, in Act No. 68, page 79, Laws 1899, to induce the early building and construction of rail-

roads, presumably for its benefit and advantage, provided that the property, roadbed, franchises, right of way, superstructures, improvements, telegraph lines and all other property used in the construction and operation of railroads as common carriers of freight and passengers thereafter constructed in compliance with the provisions of that act, should be exempt from taxation for the period of ten years, whether owned or operated by a person, association, or railway corporation or its successors or assigns. It then required a certain statement to be filed with the secretary within six months from that date; construction to be commenced within six months thereafter, and pursued under certain restrictions to completion. The compliance with these requirements by the predecessor of the appellant, and the construction of the road, and the creation by it of this property in accordance with the terms and conditions of that act, constituted a contract, by the terms of which this property was exempt from taxation for that term of years, and the United States supreme court, in a case very similar to this, has held, not only that such an exemption, when granted without words of limitation, attaches to the property as an appurtenant and goes to the purchaser, but that the sovereign power itself could not abrogate such a contract after its acceptance by a grantee by complying with the terms of the act. This was a case where the Delaware Indians prior to 1758 had claims upon large tracts of land in New Jersey. On the 9th of August, 1758, the representatives of the Indians proposed to the commissioner of the government that the government should purchase a tract of land on which they might reside, in consideration of which they would release their claim to all other lands in New Jersey. In acceptance of this proposition the legislature of New Jersey, on the 12th of August, 1758, passed an act that, among other provisions, authorized the purchase of lands for the Indians, restrained them from granting leases or making sales thereof, and enacted ''that the lands to be purchased for the Indians aforesaid shall not hereafter be subject to any tax.'' Under this act lands were purchased and conveyed to the trusteees of the Indians for their use. The Indians continued in possession of the lands thus conveyed to them until 1801, when the legislature of New Jersey authorized a sale of their lands in that state. This act contains no expression in

any manner respecting the privilege of exemption from taxation which was annexed to those lands by the act under which they were purchased and settled on by the Indians, nor does the deed conveying the said land to the purchaser thereof. In 1803 the land was sold under the last-recited act to George Painter and others. In October, 1804, the legislature passed an act repealing that section of the act of August, 1758, which exempted the lands therein mentioned from taxes. The lands were then assessed and taxes demanded. The grantees of the land proceeded in the courts of New Jersey to test the validity of the repealing act, and from an adverse decision of the highest courts of the state the case was carried to the supreme court of the United States, which court, speaking through Chief Justice Marshall, said: "The question, then, is narrowed to the inquiry whether in the case stated a contract existed, and whether that contract is violated by the act of 1804. Every requisite to the formation of a contract is found in the proceedings between the then colony of New Jersey and the Indians. The subject was a purchase on the part of the government of extensive claims of the Indians, the extinguishment of which would quiet the title to a large portion of the province. . . . The consideration agreed upon . . . is a tract of land with the privileges of exemption from taxation. . . . The privilege, though for the benefit of the Indians, is annexed by the terms which create it to the land itself, not to their persons. It is for their advantage that it should be annexed to the land, because, in the event of a sale, on which alone the question could be material, the value would be enhanced by it. The land has been sold with the assent of the state, with all its privileges and immunities. The purchaser succeeds, with the assent of the state, to all the rights of the Indians. He stands, with respect to this land, in their place, and claims the benefit of their contract. This contract is certainly impaired by a law which would annul this essential part of it. It is therefore considered by the court that the said judgment be reversed and annulled, and that the case be remanded to the said court of errors that judgment may be rendered therein annulling the assessment in the proceedings mentioned, so far as the same may respect the land in the said proceedings also mentioned." *State of New Jersey* v. *Wilson,* 7 Cranch, 164, 3 L. Ed. 303. This

case is approved in *Given* v. *Wright,* 117 U. S. 648, 655, 6
Sup. Ct. 907, 910, 29 L. Ed. 1021, wherein the supreme court
said: "We do not feel disposed to question the decision in
*New Jersey* v. *Wilson.* It has been referred to and relied
on in so many cases from the day of its rendition down to the
present time that it would cause a shock to our constitu-
tional jurisprudence to disturb it now." Both of these cases
are again cited by the United States supreme court in *Jetton
et al.* v. *University,* 208 U. S. 489, 28 Sup. Ct. 375, 52 L. Ed.
584. In *New Jersey* v. *Wilson* and *Given* v. *Wright,* neither
the law authorizing the sale nor the deeds conveying the land
said anything about exemption from taxes, while in the case
at bar such exemption is specially named in the decree of the
court ordering the sale and in the deed of conveyance, and the
law under which the sale was made authorizes the acquisition
under such sale of "the property sold, together with . . . any
franchises, rights, privileges, and immunities of said corpora-
tion" whose property is thus sold. "The words 'rights, privi-
leges, and immunities' when used in a statute of the kind
under consideration, are certainly full and ample for the pur-
pose of granting an exemption from taxation." *Phoenix F.
& M. Ins. Co.* v. *Tennessee,* 161 U. S. 174, 16 Sup. Ct. 471, 40
L. Ed. 660. It will be noticed that the language of section 1,
Act No. 68, page 79, which created the original contract of
exemption in this case, has authorized and directed, not the
transfer, but the continuation of exemption to the property
while in the ownership and possession of a successor in title in
plain and direct language, by saying that such property,
"whether owned or operated by a person or persons, associa-
tion or railway corporation, his, their or its successors or as-
signs, is hereby declared to be exempt from any and all
manner of taxation," and has thereby fully met the qualify-
ing expression contained in the latter part of the rule cited
above for the transfer of exemptions personal to the grantee
corporation, which states that "such transfer requires clear
and unmistakable evidence of the intent to grant it."

This leaves for consideration only the question whether
there is such limitation placed upon the appellant by its cer-
tificate of incorporation, or by the terms of Act No. 3, page 5,
Laws 1897, under which it was incorporated, as would de-
prive it of the power of claiming or enjoying this exemption.

It is claime by the appellees that "no corporation can receive
by transfer from another an exemption which is inconsistent
with its own charter or the laws of the state then applicable,
even though under legislative authority the exemption is
transferred by words which clearly include it." We omit
citations, as this is conceded to be the settled rule. The cer-
tificate of incorporation of the appellant, which constitutes its
charter, provides for the formation of the corporation for
these, among other, purposes: "To acquire, own, and operate
the aforesaid railroad; to acquire, own, use, and enjoy the rail-
road and appurtenances, franchises, rights, privileges, im-
munities, and exemptions, and all other properties acquired
by such purchasers at said sale as heretofore recited." We
find nothing elsewhere in the charter inconsistent with these
provisions. We find nothing in the general laws of the terri-
tory inconsistent with the enjoyment by the appellant of this
exemption, and nothing is cited by counsel, except Act No. 3,
page 5, Laws 1897, aforesaid. Upon examining Act No. 3,
page 5, of the Nineteenth Legislature, under the provisions of
which the appellant was incorporated, we find that section 6
provides: "Such new corporation shall thereupon be vested
with, and shall be entitled to exercise and enjoy all the rights,
privileges, franchises, immunities and powers which belong
to or could be exercised by the corporation whose property, or
part of whose property was acquired by such purchasers, as
aforesaid, and may acquire, own, operate and enjoy all or any
part of the property and works of such corporation in the
Territory of Arizona, or elsewhere, and may conduct its busi-
ness generally under and in the manner provided in the char-
ter of such last-mentioned corporation, or under the laws
relating thereto, with such variations in manner or form of
organization as such purchasers and their associates may deem
necessary and set forth in such certificate." This language
expressly vests such corporation with, and entitles it to exer-
cise and enjoy, all the rights, privileges, franchises, immuni-
ties and powers which belonged to or could be exercised by
the corporation whose property was acquired by the pur-
chasers who afterward formed such corporation, and as the
corporation, whose property was, in this instance, thus ac-
quired, enjoyed among its privileges and immunities an
exemption from taxation for the property in question, it

would logically follow that by this section of the act the appellant corporation was vested with and entitled to enjoy the same immunities, which would include the exemption of this property from taxation, if the exemption had been granted as a personal immunity to the corporation, but, as in this instance, the exemption was granted directly to the property instead of the corporation, and by the terms of the granting clause the property was directly exempted from taxation, whether in the ownership and control of the former corporation, or of its successors or assigns, the language above quoted *a fortiori* expressly empowers the present corporation to hold the property in question exempt from taxation. It appears that, if the language vesting in a new corporation contemplated by Act No. 3, page 5, Laws 1897, the rights, powers, privileges, franchises, and immunities considered necessary and appropriate for its existence and operation had stopped here, section 8 would have had no place in the act, and would not have appeared. But after thus vesting the new corporation with the rights, privileges, franchises, immunities, and powers belonging to and exercised by the former corporation the act proceeded, in section 7, to further endow such corporation, in the following language: ''Sec. 7. That such corporation shall be entitled to possess any and all rights, privileges, franchises, immunities and powers which are now given, or which may be hereafter given to any railroad company organized under the general laws of this territory.'' It will be seen that the language of section 7 thus goes beyond the investiture of the new corporation with the rights, powers, privileges, and immunities of the old corporation to which it was the successor, and declares that such new corporation shall, in addition thereto, be entitled to possess and enjoy ''any and all rights, privileges, franchises, immunities and powers which are now given, or may be hereafter given to any railroad company organized under the general laws of this territory.'' The very broad and comprehensive grant thus expressed necessitates the limitation contained in section 8, without which it would have been possible for a corporation organized under the provisions of this act, not only to claim, assume, and exercise all the rights, privileges, powers, and immunities of its predecessor, but a corporation organized under this act that might acquire the property of a former corporation that would

otherwise be subject to taxation in their hands, could, under
the broader grant in section 7, claim an exemption from taxa-
tion, if any other railroad corporation organized under the
general. laws of the territory might have and be enjoying
exemption from taxation under any of the exemption laws
then in existence, or that might thereafter be enacted. The
logical interpretation of the limitation contained in section 8
would read it as saying practically that "such new corpora-
tion shall, under the provisions of section 6, be vested with all
the rights, privileges, powers, and immunities enjoyed by its
predecessor without any limit to the same, except that they
shall have been enjoyed by such predecessor, and shall like-
wise be vested with all additional rights, privileges, franchises,
immunities, and powers that are now given or may be here-
after given to any railroad company organized under the gen-
eral laws of this territory, and which may not have been
possessed and enjoyed by the predecessor of such new corpora-
tion, save and except that such new corporation, having pur-
chased property the exemption of which from taxation after
change of ownership was not otherwise provided for, cannot,
by virtue of such grant of powers, privileges, and immunities,
claim any immunity from taxation for the sole reason that
some other railroad company organized under the laws of this
territory may have and be enjoying such exemption, because
in the latter instance such exemption from taxation, if en-
joyed by such new corporation, must necessarily be thus
enjoyed solely by reason of its having been given by the provi-
sions of section 7 of this act."

Counsel have referred at length to the grants and limita-
tions of Act No. 2, page 4, and Act No. 28, page 65, of the
Nineteenth Legislature, but have at last agreed that these acts
are not applicable in this case. Act No. 2, page 4, as amended
by Act No. 28, page 65, Laws 1897, empowers territorial or
federal corporations to acquire railroads sold under decree of
court by direct purchase at foreclosure sale, and Act No. 3,
page 5, Laws 1897, authorizes such purchase by private per-
sons, and the subsequent incorporation of such persons and
their associates as a domestic corporation under the laws of
this territory, which was the mode of procedure by the appel-
lant. It is not necessary to notice the very interesting dis-
cussion that has been presented in the briefs as to the power

of the corporation to assign or transfer the exemption to its successor, because that theory is applicable in the case of the other class of exemptions, termed above "personal exemptions." This being a direct grant of exemption to the property, and designated in plain and concise terms to run with the property when owned and controlled by the successors and assigns of the creator thereof, as well as when owned and controlled by such original owner, gives that question no place in this discussion.

The language of Act No. 68, page 79, Laws 1899, clearly granting the exemption from taxation to the property when owned by the successor of the original corporation, and there appearing nothing in the charter of the appellant, or the law under which it was incorporated and authorized to acquire this property, to deprive it of the benefit of such exemption, but both such charter and law empowering in express terms the appellant to receive and enjoy the benefit of such exemption, the district court erred in sustaining the demurrer to the complaint, and in rendering judgment upon such order against the plaintiff.

The judgment of the lower court is reversed, and the case remanded, with instructions to the district court to overrule the demurrer to the complaint, and take such further proceedings as are not inconsistent with this opinion.

NAVE, J.—I concur substantially in the foregoing opinion. To my conception the purport of section 8, Act No. 3, page 6, Laws 1897, is that a corporation created pursuant to that act should not be deemed to acquire, by reason of any of its terms, an exemption from taxation, and, further, that it should not be held that property acquired by it should be exempt from taxation merely because, by operation of an existing or subsequent exemption act, it was exempt under its former ownership, or because, by operation of such exemption act, its former owner was exempt. I take it that Act No. 3, page 5, Laws 1897, was not intended (it could not be operative if it were intended) to prevent future legislatures from expressly permitting a tax exemption to accompany the exempt property to a successor in interest, or to be availed of by the successor to an exempt owner. By unequivocal terms the exemption from taxation created by Act No. 68, page 79,

Laws 1899, is perpetuated during the period of exemption unto the successors of the original owner. There can be no question that the appellant is the successor of the Santa Fe and Grand Canyon Railroad Company, despite the fact that it has acquired its property by the intermediate course of judicial foreclosure sale to natural persons who subsequently organized it. *I. & G. N. Ry. Co.* v. *Smith Co.*, 65 Tex. 25. I do not feel clear that Act No. 28, page 65, Laws 1897, referred to in the concluding portion of the opinion, is without bearing upon Act No. 3, page 5, Laws 1897; but, in my judgment, the saving clause concluding section 2, Act No. 28, page 66, Laws 1897, has the same purport as section 8, Act No. 3, page 6, Laws 1897.

CAMPBELL, J., concurs.

KENT, C. J.—I concur in the result. I concur in the views expressed by Mr. Justice NAVE. I do not understand them to be at variance with the views expressed by Mr. Justice DOAN on the same points. I concur also substantially in the views expressed by Mr. Justice DOAN; but I am not fully in accord with some distinctions made by him in his opinion, or his reasons for such distinctions. On these points it is not desirable to elaborate the reason for my nonassent.