## DUNKLEY CO. v. CALIFORNIA PACKING CORPORATION.

(Circuit Court of Appeals, Second Circuit. May 25, 1921.)

No. 231.

1. **Patents ⊂⊃211(1)—License to use machine includes license to make the machine for use.**

   A license to use a patented machine *held* to include the right to make, or to have made, the machines for such use.

2. **Corporations ⊂⊃437—Grant to corporation and successors interpreted according to circumstances and "successor" not necessarily a consolidated corporation.**

   A grant to a corporation and its successors is to be interpreted according to surrounding circumstances, and one corporation may be the successor of another, though there is neither a merger nor a technical consolidation.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Successor.]

3. **Patents ⊂⊃213—License to corporation and its "successors" held to pass to a corporation succeeding to its property and business and assuming its obligations.**

   A license granted by an applicant for patents, in settlement of an expensive contest before the Patent Office to a corporation "for the benefit of itself and its successors, * * * for the use of the said invention in connection with its business relative to the canning and treatment of fruit," for the full term of any patent which might be granted on the pending application, *held* to inure to the benefit of another corporation to which the licensee sold its business, franchise and property as a whole and which continued its business, assumed its debts and obligations, and also purchased practically all of its stock.

4. **Patents ⊂⊃327—Decree enjoining infringement binds only parties personally.**

   A decree against certain fruit packing companies enjoining infringement of complainant's patents *held* not to affect the right of a licensee under such patents, on its purchase of the plants of the defendants, to use the patented machines and process therein.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Dunkley Company against the California Packing Corporation. Decree for defendant, and plaintiff appeals. Affirmed.

Certiorari denied 256 U. S. ——, 42 Sup. Ct. 54, 66 L. Ed. ——.

Plaintiff as assignee and owner sues on two patents covering the inventions of Samuel J. Dunkley, viz., No. 1,104,175, for a "machine for peeling peaches and other fruit," and No. 1,237,623, for a "process of peeling peaches or other fruits or vegetables."

These patents rest upon a single application filed by Dunkley November 29, 1904—subsequently divided so as to separately produce the above referred to machine patent and process patent.

The history of these Dunkley patents is to be found in the reports. One Beekhuis applied on May 25, 1904, for patent upon "apparatus for removing the skin from fruit"; patent issued September 3, 1907, No. 864,944. Beekhuis was subsequently put into interference with Dunkley and the latter succeeded in taking from Beekhuis what are now claims 19–22, inclusive, of the machine patent. Dunkley v. Beekhuis, 39 App. D. C. 494.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Beekhuis had assigned his patent to the California Fruit Canners' Association, which then instituted in the Patent Office a "public use proceeding," which Dunkley sought to prevent by praying for a mandamus against the Commissioner. In this he was defeated (United States ex rel. Dunkley v. Ewing, 42 App. D. C. 176), but the Association above named withdrew its application for said proceeding on May 25, 1914. Thereafter the machine patent issued on July 21, 1914.

This left pending application for the process patent, which was put in interference with one Monte; the invention of the latter being owned by the same concern as the Beekhuis patent. In this interference Dunkley also prevailed in February, 1917 (Monte v. Dunkley, 46 App. D. C. 70), and thereafter Dunkley's process patent issued on August 21, 1917.

It is plain that Dunkley's real opponent in the Patent Office was the California Fruit Canners' Association, and cotemporaneously with the abandonment by that concern of its "public use proceeding," and for a nominal consideration the plaintiff herein executed a license to its opponent for and under whatever patents might be ultimately granted upon the Dunkley application of November 29, 1904.

This license is dated May 22, 1914, and the words here important are as follows:

"Now therefore, be it known, that for and in consideration of the sum of $10 in hand paid by the California Fruit Canners' Association unto the said Dunkley Company the receipt whereof is hereby acknowledged, the said Dunkley Company does hereby grant unto the said California Fruit Canners' Association for the benefit of itself and its successors, a license free of royalties of any kind whatsoever, for the use of the said invention in connection with its business relative to the canning or treatment of fruit, granting unto the said California Fruit Canners' Association the free right for the use of any machine or machine or invention owned or controlled by the said Dunkley Company"—and covered by the patents expected to grow out of the application aforesaid.

The license agreement continues that it is granted "for the benefit of the said California Fruit Canners' Association and its successors for the full term of years of any letters patent which may hereafter be granted for the inventions" disclosed in the aforesaid application.

In August, 1915, plaintiff sued upon its then recently granted machine patent in the Northern District of California, summoning as defendants numerous companies engaged in the canning of fruit, especially peaches, including the Griffin & Skelley Company and the Central California Canners' Company. In this case Dunkley prevailed. Central, etc., Co. v. Dunkley Co., 247 Fed. 790, 159 C. C. A. 648.

Within a fortnight after the lower court's favorable decision in the case just cited, this plaintiff began action against another alleged infringer in the Southern District of California. The process patent had not yet issued and suit was begun on the machine patent alone. Subsequently and in April, 1918, the suit was enlarged by supplemental bill so as to count upon the process patent also. It was then brought to trial and the bill dismissed, the trial court holding that the Dunkley machine invention could not be "carried back beyond the summer of 1903" and was under the evidence anticipated. That court was "clearly of the opinion that there is no validity at all" in the Dunkley process patent, wherefore the bill was dismissed. The appeal resulted in affirmance, but upon the ground of noninfringement. Dunkley Co. v. Pasadena, etc., Co. (C. C. A.) 261 Fed. 386.

This present suit was brought before the decision of the District Court for the Southern District of California adverse to the patents. A. N. Hand, J., followed the reasoning, and reached the conclusion of Trippet, J., in the last-mentioned California case. But the issues in this litigation differ from those in any of the preceding causes. Here, as there, anticipation and lack of invention are advanced by the defense; but in addition there is a plea of license growing out of the following uncontradicted facts:

The California Fruit Canners' Association is a corporation of California. After it obtained the above-recited license, it continued to carry on its busi-

ness until November, 1916. At that time it sold, transferred, and assigned to this defendant, the California Packing Corporation (which is formed under the laws of New York), all its "business, franchise and property as a whole," including its good will and all its real and personal property.

It is not denied that this transaction was and is in accord with the law of California, which does not permit the express merger and consolidation of corporations.

Defendant by its contract of purchase assumed all the debts, obligations, and liabilities of the California Fruit Canners' Association, and since the purchase aforesaid defendant has carried·on the business of its assignor or predecessor. It has also acquired additional canning plants, including especially those of Griffin & Skelley and the Central, etc., Co., which were two of the unsuccessful defendants in the suit brought in the Northern District of California.

Since the sale in November, 1916, the California Fruit Canners' Association has done no business, but shortly. after said sale its capital stock was reduced to a par of $3,000 and all its assets (except $3,000) were distributed among its stockholders. The defendant herein has acquired all of this $3,000 par of stock (except eight shares) and is now the holder and owner of the same.

The decree below (appealed from by plaintiff) held: (1) That defendant during all the times complained of was a licensee of plaintiff; (2) that both the patents in suit are "invalid, null and void."

Frederick L. Chappell, of Kalamazoo, Mich., Drury W. Cooper, and Robert F. Little, White & Case, and Kerr, Page, Cooper & Hayward, all of New York City, and Chappell & Earl, of Kalamazoo, Mich., for appellant.

Cravath, Henderson, Leffingwell & De Gersdorff, of New York City, Pillsbury, Madison & Sutro, of San Francisco, Cal., and Frederick S. Lyon, of Los Angeles, Cal., for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The above statement shows that the license of 1914 was a settlement of expensive conflict between Dunkley and the Fruit Canners' Association; the consideration is manifest, entirely apart from the formal recital.

Two phrases of this document are especially important: (1) The association is licensed "for the benefit of itself and its successors," and (2) the privilege is granted for the use of the Dunkley invention "in. connection with (the association's) business relative to the canning or treatment of fruit." ·

[1] One preliminary contention may be put aside; it is suggested that, since the license is merely to use, no one acting thereunder can make the licensed article. This is not true, for "if the circumstances indicate such an intention, a license to use implies a license to make the thing to be used." Edison, etc., Co. v. Peninsular Light, Power & Heat Co. (C. C.) 95 Fed. 669, 676, citing cases. In 1914 all that Dunkley had were applications for two patents, one for a machine, the other for a process; and every circumstance points to. the conclusion that his licensee was expected to make or have made whatever machine it desired to use; while, as for the process, it is difficult to see how any one can be licensed to use a process, without by necessary im-

plication having the right to devise and build whatever apparatus exemplifying the process seems good to the licensee.

Considering the first phrase of the license agreement: While the word "successor" is a term of art, it is of the most general signification, meaning no more than "one who follows or comes into the place of another." Historically it is the equivalent, when applied to a corporation, of the word "heir" in connection with a natural person. Bouv. Law Dict. and citations. In conveyancing it is necessary to insure more than a life estate in a corporation sole (Boston v. Sears, 22 Pick. [Mass.] 122), but, though usual, a grant to a corporation aggregate without the phrase is prima facie in perpetuity, inasmuch as the company is usually perpetual (Union Co. v. Young, 1 Whart. [Pa.] 410, 425, 30 Am. Dec. 212; Chancellor v. Bell, 45 N. J. Eq. 538, 541, 17 Atl. 684).

Doubtless a license, without more, is but a personal privilege expiring by operation of law with the death of the licensed individual, or with the cessation of business life in the case of a corporate recipient (Keystone, etc., Foundry v. Fastpress Co. [C. C. A.] 272 Fed. 242, Op. filed Feb. 2, 1921), yet if the grant be also to heirs or successors it is plain that the property is descendible. Usually descendibility carried with it the quality of assignability, and it has been held that the words "heirs or successors" import assignability. Wood Harvester Co. v. Minneapolis, etc., Co. (C. C.) 61 Fed. 256, 258.

"Successor" is a plastic word, and "in modern acceptation has a broader significance than succession in respect to the estate of a deceased. It may mean * * * succeeding to a place, or a right, or an interest or a power, official or otherwise. It may mean succession in corporate control." American, etc., Co. v. Campbell, 138 Fed. 531, 534, 71 C. C. A. 55, 58.

[2] Both from reason and authority we conclude that a grant to a corporation and its successors is a phrase to be interpreted according to the surrounding circumstances. There can be no doubt that one corporation may be the successor of another, although there is neither a merger nor technical consolidation. Lightner v. Boston, etc., Co., 1 Low. 338, Fed. Cas. No. 8,343. Indeed, where what is ordinarily called consolidation occurs, the presumption (in the United States courts) is that all the constituent companies retain their corporate identity. Keokuk, etc., R. R. v. Missouri, 152 U. S. 301, 305, 14 Sup. Ct. 592, 38 L. Ed. 450. Two corporations may "remain separate legal entities and yet be merged for all practical purposes," as was said in Southern Pacific Co. v. Lowe, 247 U. S. 330, 337, 38 Sup. Ct. 540, 62 L. Ed. 1142; but always it is necessary to consider the connection in which words of succession, merger or consolidation are used.

The second phrase above quoted from the license shows that the Dunkley devices were to be utilized in a business; context and evidence prove that that business was the preserving of fruit, for which the peeling thereof was and always would be necessary. There was thus excellent reason for stating that the invention was licensed for use "in connection with" the association's business; and it is reasonable to read

the phrase of succession in conjunction with the phrase relating to a business use.

A license is but "the right not to be sued," yet it is also a piece of intangible, incorporeal personal property, and, in the nature of its estate, does not differ from many other privileges or (in a very broad sense) franchises.

It is this similarity which renders applicable to the matter in hand such cases as International, etc., Co. v. Smith County, 65 Tex. 21, and Grand Canyon, etc., Co. v. Treat, 12 Ariz. 69, 95 Pac. 187, affirmed 222 U. S. 448, 32 Sup. Ct. 125, 56 L. Ed. 265, where, speaking of the privilege of exemption from taxes as passing from the exempted corporation to one purchasing its property in foreclosure, the court held that—

"The word 'successors' is evidently used to designate such corporations or persons as may in any lawful manner acquire the proprietorship of the corporate rights and property through which they are to be exercised."

In these cases the privilege of exemption was held to be attached to the property, and the "successor" reasonably and legally to be that company which "came into the place of" the original recipient of the privilege. In like manner, an easement (another piece of incorporeal but descendible property) has been held when granted to one "and his successors" to be attached to the business of a certain store and to pass with the business. Ainslie v. Eason, 107 Ga. 747, 33 S. E. 711.

Without any written license the doctrine here contended for by appellee was enforced in Wilson v. Wilson Corp. (D. C.) 241 Fed. 494, and in Lane, etc., Co. v. Locke, 150 U. S. 193, 14 Sup. Ct. 78, 37 L. Ed. 1049, it was held to be sufficient to work a succession to a license privilege enjoyed by a copartnership, that the succeeding "company was organized upon the same basis as the firm; that the business of the company was to be the same as that carried on by [the firm], and to be carried on in the same premises; that the entire property and assets of the firm and its liabilities and obligations * * * devolved upon the company." This decision sufficiently discusses and distinguishes the earlier decisions.

Nor is it perceived that Niagara, etc., Co. v. Hibbard, 179 Fed. 844, 103 C. C. A. 330, favors appellant's contention, though much relied upon. In that case the patentee gave a corporation a ten-year license without any clause of succession. During the ten-year period, the licensee in question transferred all its property to a new company formed in another state, but the new concern did not assume the liabilities of the assignor. It was held that the second corporation was "not the successor or heir" of the original one. Plainly in that case there was no intention to make a perpetual grant. Again, it is of the essence of a legal succession that in all material respects the succeeding corporation should stand in the boots of the old one, and the deliberate omission to assume liability was itself enough to prevent that continuity of business and corporate life which is the essence of succession.

[3] Result is that when in due legal form this defendant succeeded not only to the business but (as proven) to the franchise, property, liabilities, and good will of the Fruit Canners' Association, it became within the purpose and meaning of the license agreement the successor of the licensee.

[4] It is urged that this result is an attack upon Dunkley's rights as assured in the case brought in the Northern district of California, because he there obtained injunctions against two canning companies which have now been acquired by this defendant. But this is a mistaken view of legal rights; the injunction referred to necessarily ran against certain corporations; it affected the corporate personalty, and a license likewise affects persons and corporations, and does not directly reach machinery and buildings. The Griffin & Skelley Company and Central California Company may well remain under injunction and be required to account; but that is no reason why an unlimited licensee of Dunkley's may not buy the property of these two enjoined corporations and under his license use on his own property and in his own business machines properly forbidden to the former proprietors.

Holding as we do that this defendant is the plaintiff's licensee, we need not go further and consider the validity and scope of Dunkley's patents. On this point we express no opinion, but affirm the decree below on the sole ground of license. Appellee will recover costs.