## FIRST NAT. BANK OF COOLIDGE v. MILLER et al. (No. 274.)

(Court of Civil Appeals of Texas. Waco. Nov. 12, 1925.)

1. **Guaranty ⊜=36(2)—Mistake in guaranteed account can be corrected.**

Mistake in guaranteed account can be corrected as against guarantor whether such mistake is in favor of or against guarantor.

2. **Guaranty ⊜=27—Liability of guarantor is not to be enlarged or extended beyond terms of contract; object in all cases being to ascertain intention of parties.**

While contract of guaranty is to be strictly construed, such means that liability of guarantor is not to be enlarged or extended beyond terms of contract he has made, object in all cases being to ascertain real intention of parties.

3. **Guaranty ⊜=36(2)—Mistake in son's account, which had been guaranteed by father, can be corrected to ascertain balance actually due on guaranty.**

Where father had guaranteed son's cotton account with bank, and during course of season mistake had been made, and at time of settlement father had agreed to look after such amount later, *held* such mistake could be corrected to ascertain balance actually due same as if claim was based on any other kind of contract.

Appeal from McLennan County Court; Jas. R. Jenkins, Judge.

Suit by the First National Bank of Coolidge against F. H. Miller and W. C. Miller. From a judgment for plaintiff against the last-named defendant and in favor of the first-named defendant, plaintiff appeals. Reversed and rendered.

Trippett, Boggess & Sheehy, of Waco, for appellant.

John B. McNamara, of Waco, for appellees.

STANFORD, J. W. C. Miller, who had formerly been associated with his father, F. H. Miller, in buying cotton under the firm name of F. H. Miller & Son, in the fall of 1921 went to Coolidge to buy cotton during the fall of 1921, and made application to appellant for a line of credit to enable him to do so. The method pursued was for the cotton buyer, on the purchase of cotton, to issue to the seller cotton acceptances, which, together with the cotton tickets, were held by the bank as pledgee to secure the bank for the money advanced for payment of the cotton purchased. Appellant had known F. H. Miller for a long time, and F. H. Miller & Son, a firm composed of F. H. and W. C. Miller, had kept a cotton account with appellant during previous years. For the first cotton purchased by W. C. Miller at the beginning of the buying season of 1921 W. C. Miller signed the acceptance, "F. H. Miller & Son." Appellant then wrote the following letter:

"August 23, 1921.

"Miller & Byrne, Waco, Tex.—Gentlemen: Mr. W. C. Miller is buying some cotton with us in your name, and we would be pleased to have a few lines from you stating that he is authorized to sign for your firm. We are pleased to have this account, and hope that you will keep him here through the fall.

"Yours very truly, J. R. Wallace, Pres."

To this letter F. H. Miller replied as follows:

"Riesel, Tex., Aug. 24, 1921.

"Mr. J. R. Wallace, Coolidge, Tex.—Dear Sir: Your letter to hand in regard to my son handling cotton through you. Will say that I will guarantee his account, and would like for him to handle it in his own name. This will avoid getting it mixed with our other accounts.

"Yours truly, F. H. Miller."

W. C. Miller continued buying cotton during the season, buying some 1,000 or 1,200 bales; the account being kept in the name of F. H. Miller & Son. There were several cotton buyers at Coolidge buying cotton during said season; all buying through appellant bank as above set out. Appellant put each buyer's name on a large envelope, and kept the acceptances and cotton tickets of each buyer in the envelope on which his name was written. These envelopes were kept in a case similar to a note case, and, when a buyer was ready to ship cotton, he would go to appellant bank and get his tickets and ship his cotton, drawing draft in favor of appellant, and the proceeds so shipped would be applied to his cotton account with the bank. During the same time Jarvis & Onstott were buying cotton and their account was handled through appellant bank as above stated. By mistake of either the appellant bank or W. C. Miller the cotton tickets for five bales of cot-

ton bought by Jarvis & Onstott, and belonging to them, were put in the envelope of F. H. Miller & Son, and shipped out by W. C. Miller, and the proceeds of the sale of said five bales, to wit, $446.47, credited on the books of appellant bank to the cotton account of F. H. Miller & Son.

The record discloses further that, when the season was over, in a telephone conversation appellant notified F. H. Miller of the amount of W. C. Miller's cotton account as per its books, to wit, $10,642.84. F. H. Miller instructed appellant to make draft on him at Waco for said amount, which appellant did, and which appellee, F. H. Miller, paid. At the time of making said draft appellant in said phone conversation informed appellee F. H. Miller of the mistake resulting in the proceeds of the sale of five bales of cotton belonging to Jarvis & Onstott being credited on F. H. Miller & Son's account, and F. H. Miller replied he would attend to that later. Appellant being the pledgee of the tickets for said five bales belonging to Jarvis & Onstott, and by reason of mistake, as above indicated, having permitted said cotton to be sold by W. C. Miller, and the proceeds applied to the account of F. H. Miller & Son with appellant bank, appellant became liable to and did pay to Jarvis & Onstott the value of said five bales, to wit, the sum of $446.47, and took an assignment of the claim of Jarvis & Onstott against appellees to itself, and, appellees refusing to pay same, brought this suit against F. H. Miller and W. C. Miller, and sought to recover against F. H. Miller as well as W. C. Miller on the following grounds: (1) That F. H. Miller was a partner with W. C. Miller; (2) that, if he was not such partner, he held himself out as such; and (3) on the ground that F. H. Miller had guaranteed the account of W. C. Miller with appellant. Appellee F. H. Miller answered by general demurrer, a general denial, and a sworn denial of partnership. The case was tried before a jury, and the trial court instructed a verdict for appellant against W. C. Miller for $446.47, the value of said five bales of cotton, but instructed a verdict in favor of F. H. Miller, and judgment was so entered.

## Opinion.

Appellant, by assignments properly briefed, contends the evidence was sufficient to raise the issues of fact for the jury as to whether appellee F. H. Miller was a partner with W. C. Miller, and also as to whether F. H. Miller held himself out as such partner. We think the evidence is sufficient to raise both these issues. However, we do not find it necessary to discuss either of said questions. Under several assignments, appellant contends the trial court erred in refusing to instruct a verdict in favor of appellant against F. H. Miller on his agreement to guarantee

W. C. Miller's cotton account with appellant. F. H. Miller, in his letter of August 24, 1921, addressed to J. R. Wallace, the president of appellant bank, guaranteed the cotton account of his son, W. C. Miller, with appellant during the fall of 1921. This is not disputed, but admitted by F. H. Miller. It is not disputed, but admitted, that appellant relied upon said written guaranty, and in pursuance thereof, and in reliance on said guaranty, permitted W. C. Miller to open an account with appellant and to buy cotton at Coolidge during said fall through appellant bank. It is not disputed, but conclusively shown, that W. C. Miller, by mistake, got hold of five cotton tickets that belonged to Jarvis & Onstott, but which were being held by appellant as collateral or as pledgee, and shipped this cotton, and the proceeds of the sale of said five bales, to wit, $446.47, was, as a result of said mistake, credited on the books of appellant bank to the cotton account of W. C. Miller, being carried in the name of F. H. Miller & Son. There is no dispute but that under the admitted facts the cotton account of F. H. Miller & Son, by reason of said mistake, received credit for $446.47 to which it was not entitled; nor is there any dispute but that, by reason of said mistake, under the facts stated, appellant became liable to and paid Jarvis & Onstott the value of said cotton, to wit, $446.47. There is no question but that by reason of said mistake, resulting in $446.47 being credited to the cotton account of F. H. Miller & Son, said account on the books of appellant then appeared to be $446.47 less than it ought to have been, or less than it would be if said mistake was corrected. There is no question but that said mistake was never corrected, and appellant's books continued to show the cotton account of F. H. Miller & Son to be $446.47 less than it really was, and at the close of the season, at the time F. H. Miller paid appellant $10,642.84, the amount of said account as shown by appellant's books, said account at said time was, or would have been, if said mistake had been corrected, $446.47 more, or $11,089.31. This mistake was called to the attention of F. H. Miller at the time he paid the $10,642.84, and he replied he would attend to that later. Appellee F. H. Miller, in his brief, page 10, says:

"There is no dispute that F. H. Miller became bound and obligated to pay the First National Bank of Coolidge, Tex., the cotton account of W. C. Miller during the cotton season of 1921 and 1922; that is, the cotton bought by W. C. Miller and paid for by the appellant bank."

[1, 2] It occurs to us the above statement by appellee Miller is virtually an admission of his liability for the $446.47 sued for. We think it is clear from the record that the final cotton account of W. C. Miller with appellant bank was $11,089.31; that this account

was for cotton bought by W. C. Miller and paid for by appellant bank; and was the final amount for which F. H. Miller was liable. The question involved here is purely a question of law, and, we think, the only question of law involved is: Can a mistake in a guaranteed account be corrected as against the guarantor, when the mistake is in his favor? Evidently such a mistake can and ought to be corrected, whether such mistake is in favor of or against the guarantor. There is nothing peculiar about contracts of guaranty as distinguished from other contracts. While the rule is sometimes stated that a contract of guaranty is to be strictly construed, this means nothing more than that the liability of a guarantor is not to be enlarged or extended beyond the terms of the contract he has made. Contracts of guaranty are to be construed as are other contracts; the object in all cases being to ascertain the real intention of the parties. Tobler v. Willis, 59 Tex. 81; Gardner v. Watson, 76 Tex. 25, 13 S. W. 40; Cooper Gro. Co. v. Eppler (Tex. Civ. App.) 204 S. W. 338.

[3] There is no doubt it was the intention of F. H. Miller to guarantee the entire amount of his son's cotton account with appellant bank. The amount sued for is the balance of said account, actually due, for cotton bought by W. C. Miller and paid for by appellant, and there is no more reason why the admitted error should not be corrected and thereby ascertain the balance actually due than there would be if the suit was based upon any other kind of a contract. Our courts are courts of equity as well as of law, and it is the province and duty of such courts to correct errors clearly shown, and not to permit a litigant to take advantage of a mistake innocently made and thereby relieve himself of a just and legal obligation. We sustain these assignments. The trial court erred in refusing to instruct a verdict against F. H. Miller, and for which error the judgment of the trial court is reversed, and judgment is here rendered against W. C. Miller and F. H. Miller, jointly and severally, for $446.47, with 6 per cent. interest from October 25, 1921.