WHITAKER-GLESSNER CO. *v.* STRICK ET AL.

*Guaranty—Trial by referee—Contract controversy referred to*
*statutory referee, when—Section 11475 et seq., General*
*Code—Bill of exceptions unnecessary in Court of Appeals,*
*when—New corporation liable for sale as successor of old*
*corporation, when—New corporation bound by guaranty*
*for payments due from old company—Guarantors liable*
*although manager's purchases not authorized by directors,*
*when—Acceptance by receiving and retaining goods—Buy-*
*er liable although goods undersized, when—Error to set*
*aside referee's findings and enter contrary judgment, when.*

1. Order by court of common pleas, referring contest over
   guaranty contract with consent of parties, and ordering
   written report from referee of testimony with findings and
   conclusions, *held* to make him "statutory referee," under
   Section 11475 *et seq.*, General Code.
2. It is not necessary to sign and file a bill of exceptions to
   a referee's findings and report, in order to present alleged
   errors in the Court of Appeals, where the referee has been
   appointed to determine the issues and report to the com-
   mon pleas court the testimony, with his findings of fact
   and conclusions of law, and his report and the final judg-
   ment thereon in the court of common pleas show he has
   complied with the order appointing him.
3. New company, incorporated to take over assets of old com-
   pany and as consideration to assume the debts of the old
   company, *held* its "successor," within meaning of sales
   contract with the old company, "its successors and as-
   signs," and liable to pay for cans delivered, received, and
   retained by it.
4. New company, incorporated to take over all the assets of
   old company in consideration of payment of the old com-
   pany's indebtedness, *held* the old company's "successor,"
   within the meaning of a guaranty contract, guaranteeing
   payment for cans sold to the old company, "its successors
   and assigns."
5. Guarantors *held* liable under contract guaranteeing pay-
   ment for the sale of cans, notwithstanding that the sales

contract was for a 3-year term which was a longer time than the term of office of the buying company's manager, who entered into the contract without the approval of the board of directors.

6. Company receiving cans delivered and retaining them under such circumstances as would amount to an acceptance *held* liable for their price, whether or not they were size ordered.

7. Under Section 11478, General Code, providing trial before referee is to be conducted as if by the court, and Section 11479, providing for review of referee's decision and that his report shall stand as the decision of the court, where the record of proceedings before the referee was free from prejudicial error, it was error to set aside the referee's findings and enter a contrary judgment.

(Decided April 4, 1927.)

Error: Court of Appeals for Lucas county.

*Messrs. Ritter & Brumback,* for plaintiff in error.
*Messrs. Boggs & Doty* and *Mr. F. M. Sala,* for defendants in error.

Williams, J. The record in this cause contains 2,995 pages of testimony, taken before the referee and by him reduced to writing and reported to the court, and also several hundred pages of documentary evidence. The briefs of counsel for plaintiff in error contain 143 pages, and that of counsel for defendants in error 381 pages. We feel, however, that the vital questions involved may be covered in a short opinion.

An action was brought in the court of common pleas of this county by Whitaker-Glessner Company, as plaintiff, against John Strick, H. J. Quirk, Frank Kaiser, E. C. Schoen, F. W. Siek, Charles

Schmidt, Steve Drotar, Jules Lievens, and Orrin Bibb, as defendants, to recover upon a written contract guaranteeing the payment of the price of cans sold by the plaintiff under a contract made between the plaintiff and the Marleau-Bucklen-Schoen Company, its successors and assigns, and for damages. for breach of contract; the amount claimed in the amended petition being $18,691.16, for the purchase price of cans, and $132,227.09, for damages. The defendants filed an answer and cross-petition, and an amendment to the answer and cross-petition, in which they set forth certain defenses and claimed a set-off in the sum of $34,000, by reason of the fact that cans delivered were of a size other than ordered. The defendant F. W. Siek died during the pendency of the action, and the cause was revived in the name of Henry W. Siek, administrator of the decedent's estate. Upon consent of the parties, entered upon the journal, the cause was referred to Fred H. Kruse, as referee, who was ordered to reduce the testimony of the witnesses to writing, without the signature of the witnesses subscribed thereto, and to report the same to the court together with his findings of fact and conclusions of law, separately made. Such an order made him a statutory referee under the provisions of Section 11475 et seq., General Code. Upon trial the referee found against the claim of the plaintiff for damages and against the claim of the defendants on their set-off, but found that there was due the plaintiff from the defendants on their contract of guaranty the sum of $17,846.17, with interest at 6 per cent. from September 16, 1921, for the cans furnished. Motion for a new trial was filed before the referee and overruled, and a bill of exceptions taken,

signed, and filed, although the latter was not necessary under the doctrine of *State, ex rel. Klorer,* v. *Fimple, Judge,* 91 Ohio St., 99, 110 N. E., 253. Thereafter the cause came on for hearing before the court of common pleas upon the findings, report of the referee, and the exceptions. The court refused to enter judgment in favor of the plaintiff upon the findings of the referee, but upon consideration of evidence taken before the referee made new findings of fact and law and entered judgment in favor of the defendants upon all of plaintiff's claims, but found against the defendants upon the set-off, and entered judgment accordingly. Thereupon the plaintiff in error prosecuted error to reverse that judgment. The defendants in error, however, filed no cross-petition in error.

Briefly stated, the facts are as follows: On or about April 6, 1921, H. J. Quirk was employed as manager of the Marleau-Bucklen-Schoen Company, a corporation engaged in the packing of canned goods, especially chili sauce and catsup. This corporation was indebted in the sum of approximately $180,000, and the defendant Quirk conceived the idea of incorporating a new company to be known as the Ohio Conserving Company, to take over all the assets of the Marleau-Bucklen-Schoen Company, in consideration of the payment of the latter company's indebtedness, which payment was to be secured by mortgage. Thereupon the Ohio Conserving Company was incorporated, and the original defendants, with the exception of Schoen, became its incorporators and first stockholders and members of its first board of directors. May 17, 1921, the directors of the old company approved the sale to the new company, and on June 22, 1921,

that sale was approved at meetings of the stockholders of the old and new companies. On or about June 23 the two companies executed the agreement, mortgages, and other documents, by which the sale of the assets from one to the other was consummated, and on the same date the defendant Quirk ceased to be manager of the old company and was employed as manager of the new. Realizing that the new company would need cans for the manufacture of its canned goods, especially tomato paste, the old company on June 18, 1921, five days before the sale of the assets to the new company, and four days before the incorporation of the new company was completed, entered into a contract for the purchase of not less than 10,000,000 nor more than 15,000,000 cans annually for a period of three years, the cans to be delivered to the Marleau-Bucklen-Schoen Company, "its successors or assigns." Plaintiff, however, refused to enter into this contract for the sale of cans until the original defendants had executed to it the contract of guaranty hereinbefore referred to, which contained the following provision:

"Now these presents, witness, that said parties of the second part [referring to the defendants] jointly and severally and for each other, in consideration of $1 to each in hand paid by the party of the first part, and in consideration that the said Whitaker-Glessner Company executing certain sales contract hereinbefore mentioned by and with the Marleau-Bucklen-Schoen Company, for certain cans, do hereby jointly and separately guarantee to the party of the first part the payment of the price of all cans sold by the party of the first part under

said contract with the Marleau-Bucklen-Schoen Company, its successors and assigns.''

The contract of guaranty was signed by all of the parties between the date it bears and July 1, 1921. After the contract of guaranty was executed the plaintiff shipped cans to the new company, many of which were used, and several thousand dollars were paid to apply upon the purchase price thereof. No cans were ever delivered to the old company under the contract. Later, both companies went into bankruptcy. Immediately previous to such bankruptcies 1,935 cases of empty tomato paste cans, 200 to a case, were in possession of the new company and were taken possession of by the old company under its mortgage, and the proceeds of the sale thereof were finally distributed to the general creditors of the old company. The contract for the purchase of cans was a blanket contract which contemplated that cans would be ordered from time to time, and under it the new company, the Ohio Conserving Company, as successor to the old company, ordered the cans in question, and the plaintiff shipped them relying upon the contract of guaranty which was entered into for the express purpose of enabling the new company to obtain cans necessary to produce and market its product. Within the meaning of the terms used in the contract for the purchase of cans, and in the contract of guaranty, the new company was the successor of the old company, and as to cans actually delivered to and received and retained by the new company, in reliance by the plaintiff upon the contract of guaranty, the new company as successor of the old company is liable for the purchase price of such cans in accordance with the terms of

sale contained in the contract for the purchase thereof, and the signers of the contract of guaranty made themselves liable for the cans so delivered and received, even though the blanket contract for the purchase of cans may have been for a period longer than the term of office of the manager, Quirk, who entered into the contract without the approval of the board of directors of the old company. The signers of the contract of guaranty cannot escape liability for the purchase price of cans so delivered and actually received by the new company.

As to the claim that the signers of the contract of guaranty were induced to enter into it by reason of fraud, the finding of the referee that that contract was not vitiated by fraud was amply sustained by the evidence and warranted by law. We fail to see how the referee could reach any other conclusion.

As to the claim of the defendants, by way of set-off, to the effect that the paste cans were not of the size ordered, it appears that the cans delivered were either used in the business of the new company, or, if not used, were, after being received and accepted by the new company, taken possession of by the old company as mortgagee. The claim that the cans were not of the proper size comes too late. The new company received the cans and retained them under such circumstances as would amount to an acceptance. It was therefore legally obligated to pay for them.

Under the provisions of the General Code by which the referee was appointed, the trial was to be conducted as if by the court. Section 11478, General Code. After the decision of the referee is given, it may be excepted to and reviewed as in a

trial by the court. Section 11479, General Code; *State, ex rel. Klorer,* v. *Fimple, supra.* If the record of the proceedings before the referee is free from prejudicial error, the court making the reference enters judgment thereon. Section 11479, General Code.

The court below committed prejudicial error in setting aside the findings of the referee and entering a judgment in favor of the defendants. The proceedings of the referee were free from prejudicial error, and, therefore, for the reasons indicated, the judgment of the court below will be reversed and the cause remanded to that court, with directions to enter final judgment upon the findings of the referee; that is to say, a judgment in favor of the plaintiff for $17,846.17, with interest from September 16, 1921.

*Judgment reversed.*

RICHARDS and LLOYD, JJ., concur.