## NORTH TEXAS NAT. BANK v. THOMPSON et al. (No. 10439.) *

Court of Civil Appeals of Texas. Dallas. Oct. 12, 1929.

Rehearing Granted and Cause Reversed and Remanded Nov. 30, 1929.

all of Dallas, and J. L. Gammon, of Waxahachie, for appellees.

LOONEY, J. The North Texas National Bank, plaintiff below, appeals from an adverse judgment rendered upon an instructed verdict. As the decision of the case will turn largely upon the construction of written instruments, they will be set out at length.

On July 29, 1921, T. J. Cole, I. M. Williams, D. G. Thompson, R. K. Erwin, and Mrs. Ella H. Gibson, stockholders and directors of Texas Mortgage Company of Texas, a corporation, executed and delivered to Southwest National Bank of Dallas, Tex., the following written instrument:

### "Limited Guaranty

"For the sum of One Dollar ($1.00) and other valuable consideration, I, we, or either of us, jointly and severally, guarantee the payment and agree and promise to pay at Dallas, Texas, to the Southwest National Bank of Dallas, its successor, successors or assign, at maturity or at any time thereafter as demanded by it, all notes, discounts, overdrafts and any and all indebtedness or obligation, whether joint or several, or both, or primary or secondary, contract of tort, for which The Texas Mortgage Company of Texas, Dallas, Texas, is, or are, now, or hereafter may become, liable or indebted to the Southwest National Bank of Dallas, its successor, successors or assign, provided, however, that my or our liability hereunder shall not exceed the sum of Twenty Thousand Dollars ($20,000.00), and the payment of said sum of Twenty Thousand Dollars ($20,000.00) under this contract to said Southwest National Bank of Dallas, its successor, successors or assign, by the subscriber or subscribers hereto, such payment to be applied to the indebtedness of the principal debtor as may be determined by the Southwest National Bank of Dallas, its successor, successors or assign, shall satisfy and discharge the obligation of this instrument.

"I, we, and each of us hereby waive notice of acceptance of this guaranty and all other notices in connection herewith, or the indebtedness or obligation guaranteed thereby, and waive diligence, presentment, notice, protest and suit on the part of the bank, its successor, successors or assign, in the collection of any indebtedness or obligation hereby guaranteed. This guaranty is a continuing one and shall continue to apply without regard to the form or amount of the indebtedness or obligation guaranteed, which the bank, its successor, successors or assign, may create, renew, extend or alter, in whole or in part, without notice to the undersigned from time to time as it may elect without affecting the obligation of this guaranty, and it is here-

Thomas, Storey & Grady, of Dallas, for appellant.

Saner, Saner & Jack, I. M. Williams, and Beall, Worsham, Rollins, Burford & Ryburn,

by expressly agreed that the bank, its successor, successors or assign, may surrender, release, exchange or alter any collateral or other security held by it for the claims hereby guaranteed, either in whole or in part, without affecting the obligation or liability of the undersigned on this guaranty, and this guaranty shall be and continue effective notwithstanding any legal disability of the principal debtor to incur the indebtedness or obligation, in whole or in part.

"This instrument shall bind me, us, and each of us, severally and jointly, until the Southwest National Bank of Dallas, its successor, successors or assign, shall have received notice in writing, that the subscriber hereto giving such notice elects to be no longer bound by this guaranty, after which time this instrument shall bind the subscriber hereto giving such written notice only as to the indebtedness or obligation then existing and renewals or extensions in whole or in part of the then existing indebtedness or obligation, but shall continue in full force and effect at the option of the bank, its successor, successors and assign, as to all other subscribers hereto not giving such written notice." (S. F. 7–9.)

After the execution of this instrument, Texas Mortgage Company became indebted to Southwest Bank in the sum of $4,000, evidenced by a note remaining unpaid on May 13, 1925, when Southwest Bank and plaintiff bank entered into the following written agreement, to wit:

"This agreement, this day made and entered into by and between the Southwest National Bank of Dallas, Texas, hereinafter styled party of the first part, and North Texas National Bank of Dallas, Texas, hereinafter styled party of the second part, witnesseth,

"That the party of the first part does hereby sell, assign and agree to deliver any and all of the assets of any kind, character and description except its corporate name and charter, unto the party of the second part, hereby authorizing, empowering and directing the President, either of the Vice-Presidents, or the Cashier of the party of the first part to transfer by endorsement, all notes, bills of exchange or other evidence of debt owned by the party of the first part, unto the party of the second part; to execute and deliver all and any deeds or other instruments necessary to convey title to any real estate owned by party of the first part unto party of the second part, and to transfer and deliver all bank balances due from other banks by means of drafts and all means, and to deliver all cash, checks, or equivalent of money owned by party of the first part unto party of the second part, it being the intention of this agreement to sell, transfer and deliver by any and all means all of the assets of the party of the first part, except its cor-

porate name and charter, unto the party of the second part.

"2. That in consideration that the party of the first part shall and does sell, assign and deliver all of the assets of every kind, description and character, its corporate name and charter alone excepted, unto the party of the second part as hereinafter set out.

"Now, therefore, party of the second part does hereby assume all of the liabilities of the party of the first part, except its liability to its shareholders; and party of the second part hereby further agrees to select from the assets of the party of the first part a sufficient amount of assets to equal in value the liabilities assumed by party of the second part.

"The party of the second part shall hold all assets taken over under this transfer from the party of the first part over and above the total selected as hereinbefore provided and set up on its books to offset all liabilities of record except to shareholders of the party of the first part; that said assets shall be so held for a period of one year from the date of transfer to indemnify it in assets set up on its books and to guarantee it against loss thereon for said period of one year; that party of the second part shall have the power of substitution and the privilege of exchange between the assets set up on its books and the residue of assets taken over from party of the first part; that after the expiration of one year from the date of this transfer, the party of the second part agrees to deliver to such duly appointed liquidating agent as may be selected by party of the first part, all remaining assets taken over from the party of the first part and above what shall have been at that time permanently accepted by party of the second part equal in value to the amount of liabilities of record assumed by party of the second part, said remaining assets to become the property of the shareholders of the party of the first part, to be further administered and distributed by the duly appointed liquidating agent of party of the first part for the use and benefit of its shareholders."

In accordance with the provisions of the agreement between the banks, appellant permanently accepted and became the owner of the note for $4,000, held by Southwest Bank against the mortgage company, above referred to, and incidentally, of course, became assignee of the guaranty held as security therefor. The mortgage company, however, paid appellant this note on July 8, 1925, and from that date until February 1, 1926, no additional debt was created; but on the latter date, appellant, relying upon the validity and continuing existence of the guaranty, loaned the mortgage company $20,000, which remains unpaid.

This suit is bottomed on the idea that, appellant, under the facts and circumstances of

the case, is both a successor and an assign of Southwest Bank, and that, as such, the guaranty ran in its favor; hence it was authorized to rely upon same in making said loan to the mortgage company.

At the conclusion of the evidence, the court, of its' own motion, instructed the jury to return a verdict against appellant and in favor of appellees, and also directed a verdict in favor of plaintiff against defendant R. K. Erwin. Having instructed a verdict in favor of appellees, the reason that actuated the court in instructing a verdict against R. K. Erwin, a coguarantor, is not apparent, but this is an immaterial inquiry, as Erwin does not appeal. W. J. Rutledge, Jr., trustee in bankruptcy for Texas Mortgage Company, was also brought in as a defendant, but the suit was dismissed as to him. Judgment following the verdict, as directed by the court, was rendered for plaintiff against Erwin, and in favor of defendants, Williams, Thompson, and Mrs. Gibson, that plaintiff take nothing as to them, from which this appeal is prosecuted.

Appellees say that appellant's brief should not be considered because it does not contain an assignment of error. This objection is not well taken. The brief of appellant, beginning at page 123 and on to the end, contains an assignment of 41 errors. Other objections are also urged, that particular assignments do not distinctly specify the error complained of, are vague, general, and fail to refer to the parts of the proceedings in which the alleged error was committed. These objections are overruled.

We believe the questions on which the decision of the case turn are presented in substantial compliance with the rules of court.

The evidence failed, in our opinion, to raise the issues of estoppel, agency, or of individual benefits alleged to have been received by appellees, and in so far as these issues are involved, appellant's propositions Nos. 6, 7, 8, 9, and 10, and assignments upon which they are based, are overruled.

We also hold that the error of the court in excluding the testimony of Everett S. Owens, as to what appellant actually did with reference to taking over the assets of the Southwest National Bank under the written contract, was harmless, in that, the witness had previously testified fully as to what was done by appellant in a physical way, in taking over these assets; that is to say, his testimony is to the effect that appellant took over all assets of the Southwest Bank, including the note of $4,000 against Texas Mortgage Company and the guaranty contract held as security therefor. The remaining matter set out in the bill of exception was not responsive to the question asked the witness, and was therefore properly excluded. We therefore overrule appellant's fourth proposition and the assignments upon which the same is based.

The material questions for our consideration are these: Was the obligation of appellees, under the guaranty, limited to the payment of debts against the mortgage company created in favor of Southwest Bank alone, or were they also obligated to pay any such debts as were created in favor of a successor or assign of Southwest Bank? And if so, is appellant, under the facts and circumstances of the case, an assign or a successor of Southwest Bank?

Counsel for the parties have brought to our notice quite an array of cases, more or less analogous to the case at bar; but we fail to find a case where the language of the instrument, and the facts involved, were such as to render the decision an exact authority. Nothing in the nature of a general rule can, in our opinion, be laid down respecting the question as to whether a change in a corporation, such as the one involved here, discharges a guaranty, or whether it is to be construed as continuing in force after such change; each case, under its peculiar facts, must be solved by the application of familiar rules of construction, to the language used in the instrument, in the light of surrounding circumstances. The general rules for the construction of contracts are equally applicable to contracts of guaranty. On this point, Judge Stanford, for the Waco Court of Civil Appeals, in the case of First National Bank v. Miller, 277 S. W. 443, 445, said: "While the rule is sometimes stated that a contract of guaranty is to be strictly construed, this means nothing more than that the liability of a guarantor is not to be enlarged or extended beyond the terms of the contract he has made. Contracts of guaranty are to be construed as are other contracts; the object in all cases being to ascertain the real intention of the parties." Also see Jarecki Mfg. Co. v. Hinds (Tex. Civ. App.) 295 S. W. 274, 276; Pingrey on S. & G. (2d) §§ 356, 357, pp. 371, 372.

A number of courts, discussing the liability of sureties and guarantors, have said that the rule of strictissimi juris is applicable, that is, that sureties and guarantors are favorites of the law, that they have a right to stand upon the strict terms of the obligation, for the reason that they usually derive no benefit from the contract, their object being to befriend another. Crane Co. v. Specht, 39 Neb. 123, 57 N. W. 1017, 42 Am. St. Rep. 562. But even if the principal of strictissimi juris is to be accepted as a modification of the general rule of construction, still it is not applicable here, because the guaranty in question was based upon consideration. Appellees were stockholders and directors of the mortgage company, and any money borrowed by it on strength of the guaranty went

into the business of the company and inured incidentally to the benefit of all stockholders, including appellees. See 32 Cyc. 306; United States for Use of Hill v. American Surety Co., 200 U. S. 202, 26 S. Ct. 168, 50 L. Ed. 437; Lackland v. Renshaw, 256 Mo. 133, 165 S. W. 314; Mercantile Trust Co. v. Donk (Mo. Sup.) 178 S. W. 113, 116.

■ But the rule of strictissimi juris cannot mean more than this, that where doubt and uncertainty exists as to the meaning of a contract, rendering it susceptible to two interpretations, one favorable to the surety or guarantor, the other unfavorable, the former interpretation will be adopted.

■ However, there is no occasion for the court to indulge in refinements in order to arrive at the true meaning of the guaranty under consideration, as its language is plain and understandable, its provisions are all harmonious, and upon the whole evince the undoubted purpose on the part of guarantors to establish a line of credit for the mortgage company, not only with Southwest Bank, but with any one occupying the status of an assign of, or a successor to, said bank.

The name of Southwest National Bank appears nine times in the instrument, and wherever written it is followed by the words "its successor, successors or assign." Guarantors assumed no obligation in favor of Southwest National Bank not also assumed in favor of "its successor, successors or assign," nor was any right or privilege given the bank to extend credit to the mortgage company not also given "its successor, successors or assign." But appellees contend that the guaranty was addressed to and intended for the exclusive use and benefit of Southwest National Bank, that the words "successor, successors or assign" will be given their full effect by construing the language to mean, that any obligation created thereunder in favor of Southwest Bank was capable of being enforced, on being assigned, by any assignee or successor in ownership of said bank. We cannot accept this view, the use of the phrase "its successor, successors, or assign," immediately following the name of Southwest National Bank, wherever written in the instrument, evinced a purpose on the part of guarantors, not only to secure the payment of loans made to the mortgage company by Southwest Bank, but also loans made and debts created by any successor or assign of the bank. The dominant purpose of the guaranty contract is consistent with this view, and inconsistent with the view advanced by appellees. Among other provisions, we read: "I, we, or either of us, jointly and severally, guarantee the payment and agree and promise to pay at Dallas, Texas, to the Southwest National Bank of Dallas, its successor, successors or assign * * * all notes, discounts, overdrafts, and any and all indebtedness or obligations, whether joint or several, or both, primary or secondary, contract or tort, for which the Texas Mortgage Company of Texas, Dallas, Texas, is or are, now or hereafter may become liable or indebted to the Southwest National Bank of Dallas, its successor, successors or assign," etc.

We also read: "This guaranty is a continuing one and shall continue to apply without regard to the form or amount of the indebtedness or obligations guaranteed (not exceeding $20,000.00) which the bank, its successor, successors or assign may create, renew, extend or alter in whole or in part."

Again we read: "This instrument shall bind me, us, and each of us, severally and jointly, until the Southwest National Bank of Dallas, its successor, successors or assign shall have received notice in writing that the subscriber hereto giving such notice elects to be no longer bound by this guaranty, after which time this instrument shall bind the subscriber hereto giving such notice only as to the indebtedness or obligation then existing, * * * but shall continue in full force and effect at the option of the bank, its successor, successors and assign, as to all other subscribers hereto not giving such written notice."

The phrase "its successor, successors or assign," as it appears in quoted excerpts, cannot be given effect, should we adopt the construction contended for by appellees; that is, by holding that the language meant simply that a debt created thereunder by Southwest Bank was capable of being assigned, and when assigned could in turn be assigned and transmitted by any successor or assign of said bank. Under such construction the quoted language employed by guarantors, which, in our opinion, clearly contemplated the creation of debts by, and stated their obligation to pay same to, the successor, successors, or assign of the Southwest Bank, must be disregarded as meaningless. As the purpose of the guaranty was to enable the mortgage company to borrow money, we can imagine no reason why this purpose could not have been accomplished, just as effectually by loans made to the mortgage company by any successor or assign of the bank as well as by loans made by the bank itself.

Appellees contend, however, that it is unreasonable to say that guarantors intended to contract indefinitely with parties unknown at the time, that in such a situation they would have no protection against illegal and improvident contracts entered into by the mortgage company, or against the consequences of tortuous injuries arising from the acts of the mortgage company in favor of the successor, successors, or assign of the bank. This contention challenges simply the wisdom of such an arrangement, but is no answer whatever to the fact that guarantors did in fact execute a guaranty that may or may not be fraught with such consequences.

This reasoning could be urged with much greater force against a general guaranty, addressed for acceptance to the general public, and yet guaranties of this nature are of common occurrences in commercial transactions and are considered legal and enforceable.

Guarantors, however, were sui juris, and it must be held that they contemplated all consequences that might flow from the fair import of the language employed. The guaranty, however, is not as wide open and unrestrained as appellees represent it to be. As directors of the mortgage company, they were privileged to exercise a restraining influence over its acts; they limited their ability by a provision of the guaranty so that, in no event, could it exceed $20,000, and further they reserved the right to revoke the guaranty at any time, by serving written notice upon the bank, its successor, successors, or assign. Appellees, however, failed to exercise this right, but were content to leave the instrument outstanding in the hands of Southwest Bank, until it sold its assets and business to appellant and went into liquidation. The transaction between these banks was not done in a corner, appellees were cognizant of same, and knew that appellant had succeeded to the business of the Southwest Bank. We hold therefore that the guaranty was given for the benefit, not only of the Southwest Bank, but of any successor or assign of said bank as well.

The next question for consideration is: Was appellant the successor or assign, or both, of the Southwest National Bank, within the meaning of the guaranty? That appellant, under the terms of the contract between the banks, and the undisputed facts, was assignee of all the latter's choses in action, including the note for $4,000 held against the mortgage company, there can be no question.

To "assign" is to make a right over to another, as to assign an estate, annuities, bonds, etc., over to another. Seventh National Bank v. Shenandoah Iron Co. (C. C.) 35 F. 440; Richie v. Cralle, 108 Ky. 483, 56 S. W. 963; Bouv. Law Dict., vol. 1, page 260; Webster's Dict.; Words and Phrases, First Series, vol. 1, p. 559. When the note for $4,000 held by Southwest Bank against the mortgage company, passed by assignment to appellant, the guaranty as security for same also passed as an incident to the debt. However, when the mortgage company paid the note, the guaranty was no longer an asset, but remained in the hands of appellant, assignee, an offer or proposal of guaranty until acted upon by the creation of a debt-thereunder, for then, and only then, was there a meeting of minds essential to the existence of a contract. 12 R. C. L. 1061, § 10.

We hold therefore that appellant was an "assign" of the Southwest Bank, within the meaning of the guaranty, and that relying upon same the loan for $20,000 made by it to the mortgage company fixed the liability of appellees for its payment.

The other question, that is, was appellant also a "successor" of the Southwest Bank, within the meaning of the guaranty, should, in our opinion, be answered in the affirmative. The word "successor," employed in contracts and statutes, has no fixed meaning. A corporation may be considered the successor of another, although both retain their corporate identity, dependent upon the facts and surrounding circumstances, and this status may exist in the absence of either an amalgamation, merger, or technical consolidation.

The facts bearing on this issue are substantially these: Appellant took over the business of the Southwest Bank, all its assets, except its corporate name and charter, including the banking house, furniture, fixtures, books, deposits; in fact, every asset, except as above stated. The Southwest Bank closed business on Saturday night, and on the following Monday appellant opened the banking house for business, all notes outstanding issued by Southwest Bank were paid by appellant, checks drawn on Southwest Bank and passbooks issued by it were honored by appellant; in fact, there seems to have been no hiatus whatever. Appellant assumed all liabilities of the Southwest Bank, including about $7,000,000, to approximately 18,000 depositors. These accounts were carried without interruption as though no change in ownership had taken place. Southwest Bank went out of business and into liquidation, and at the expiration of a year from the date of the sale and transfer, as provided in the contract, appellant, after culling from the assets such as it desired to permanently retain as an offset against the indebtedness assumed, delivered to the liquidating agent of Southwest Bank the remaining assets of the ostensible value of about $2,000,000, but of the actual value of about $200,000.

Thus we see that, after the sale and transfer by Southwest Bank to appellant, the former went out of existence, for all practical purposes, and while it retained its corporate existence, it was a mere shell of its former self, engaged in no activities, save to liquidate and realize upon the remnant of its assets.

In the case of I. & G. N. Ry. Co. v. Smith County, 65 Tex. 25, the Supreme Court held that the property or franchise of a railroad company, exempt from taxation under a legislative act, was also exempt to persons who might succeed in any manner to its corporate rights and ownership. The court said: "The word 'successors' is evidently used to designate such corporations or persons as may, in any lawful manner, acquire the proprietorship of the corporate rights and property through which they are to be exercised, which had the corporation to which the exemption was given."

The case of Dunkley Co. v. California, etc., Corp. (C. C. A.) 277 F. 996, 998, involved the construction of a license granted by an ap-

plicant for patent, to a corporation, "for the benefit of itself and its successors." The Circuit Court of Appeals held that the license inured to the benefit of another corporation to which the licensee sold its business, franchise, and property as a whole, the vendee continuing the business and assuming the debts and obligation of the vendor. Construing the meaning of the word "successor," used in the license, the court said:

" 'Successor' is a plastic word, and 'in modern acceptation has a broader significance than succession in respect to the estate of a deceased. It may mean * * * succeeding. to a place, or a right, or an interest or a power, official or otherwise. It may mean succession in corporate control.' American, etc., Co. v. Campbell, 138 F. 531, 534, 71 C. C. A. 55, 58.

"Both from reason and authority we conclude that a grant to a corporation and its successors is a phrase to be interpreted according to the surrounding circumstances. There can be no doubt that one corporation may be the successor of another, although there is neither a merger nor technical consolidation. Lightner v. Boston, etc., Co., 1 Low, 338, Fed. Cas. No. 8,343. Indeed, where what is ordinarily called consolidation occurs, the presumption (in the United States courts) is that all the constituent companies retain their corporate identity. Keokuk, etc., R. R. v. Missouri, 152 U. S. 301, 305, 14 S. Ct. 592, 38 L. Ed. 450. Two corporations may 'remain separate legal entities and yet be merged for all practical purposes,' as was said in Southern Pacific Co. v. Lowe, 247 U. S. 330, 337, 38 S. Ct. 540, 62 L. Ed. 1142; but always it is necessary to consider the connection in which words of succession, merger or consolidation are used."

In the case of Dallas Compress Co. v. Liepold, 205 Ala. 562, 88 So. 681, 685, the Supreme Court of Alabama held that where a conveyance of land was made to a corporation, "its successors and assigns," a covenant of warranty to the corporation and "its successors" was not limited to those who succeeded to the corporate character of the grantee, but was intended to also run in favor of its assigns as well.

In Whittaker Co. v. Strick, 25 Ohio App. 415, 158 N. E. 554, 556, a new corporation was organized to take over all the assets of an existing corporation, in consideration of the payment of its indebtedness. The appellate court of Ohio held that the new company was the successor of the old, within the meaning of a guaranty contract guaranteeing payment for merchandise sold to the company, "its successors and assigns."

In the case of Grand Canyon R. Co. v. Treat, 12 Ariz. 69, 95 P. 187, 192, the Supreme Court of Arizona had under consideration the right to a tax exemption of a corporation organized by purchasers at foreclosure sale of a railroad constructed pursuant to an act of the Arizona Legislature, exempting such constructing railroad and "successors" from taxation. The court held that the corporation formed by purchasers of the corporation, to whom the statute gave immunity from the payment of taxes, was "its successor," within the meaning of the statute and as such was entitled to the exemption. In a concurring opinion, Judge Nave, of the court, said: "There can be no question that the appellant is the successor of the Santa Fé & Grand Canyon Railroad Company, despite the fact that it has acquired its property by the intermediate course of judicial foreclosure sale to natural persons who subsequently organized it. (Citing the case of I. & G. N. Ry. Co. v. Smith County, 65 Tex. 25.)"

These decisions show convincingly that the word "successor," as used in contracts and statutes, has no fixed meaning, for in neither of the cases discussed was there either a merger, consolidation, or technical succession; yet it was held, where, as in the case at bar, one corporation assumed the debts and obligations and took over the assets and business of another, that a succession resulted, and likewise, where one corporation acquired the franchise or immunity of another, that a succession resulted.

For reasons hereinbefore stated, we are of opinion that the court erred in instructing a verdict in favor of appellees against appellant; therefore the judgment below is reversed and here rendered for appellant.

On Motion for Rehearing.

■ At a former day of the term, we reversed the judgment of the trial court and rendered judgment for appellant, North Texas National Bank.

We reached this decision for reasons fully stated in the opinion on file, which is referred to as explanatory of our former and present holdings. We held that appellant, under the facts and circumstances, was both successor and assign of the Southwest National Bank; therefore that appellees, as guarantors, were liable for money loaned by appellant to the Texas Mortgage Company, in reliance upon the guaranty contract of July 29, 1921, that obligated appellees to pay Southwest National Bank, "its successor, successors or assign," any and all indebtedness for which the Mortgage Company was then indebted to said bank, or might in the future become indebted to it, "its successor, successors or assign." The opinion discussed the issues that were given prominence in the briefs and arguments, but nowhere was there a suggestion that the pleadings were insufficient to warrant a judgment in favor of appellant; hence that question was not passed upon. In their motion for rehearing, however, appellees insist that the pleadings are insufficient as a basis for the judgment rendered by us in favor of appellant, in that, after the trial court sustained special exceptions to appel-

lant's second amended original petition and struck out paragraphs 1 to 6, inclusive, there was not left a sufficient basis for the judgment.

The trial court, after the exceptions were presented, took same under consideration and made no ruling thereon until after the conclusion of the evidence, and at that juncture sustained the exceptions and struck out the portions of appellant's pleadings above mentioned. This ruling had the same practical effect as if a general demurrer had been sustained, for it left of the original pleading only the formal part and certain alternative allegations, raising the issues of estoppel and agency that were based and dependent upon the parts stricken out, but, standing alone, were unrelated; in fact, incoherent. Appellant, however, in an attempt to retrieve the ground lost by the ruling of the court, filed a trial amendment, but failed utterly to allege a cause of action under the guaranty contract, that is, failed to allege that appellant, in reliance upon the guaranty contract, had extended credit to the Mortgage Company in the sum of $20,000, for the recovery of which the suit was brought. These essential allegations were made in paragraphs 5 and 6 of appellant's second amended original petition, stricken out on exceptions, but were not reproduced in the trial amendment.

Appellant properly assigned error on the action of the court in sustaining these special exceptions, the questions, however, were only vaguely presented in its brief and not referred to at all in either the written or oral arguments; in other words, it seems that counsel for both parties, and the court following the lead of counsel, proceeded altogether on the theory that the pleadings were sufficient.

The trial court, in our opinion, erred in sustaining the special exceptions and in striking out the portions of appellant's petition, therefore the case will be remanded.

The motion of appellees for rehearing is sustained, our judgment heretofore rendered for appellant is set aside, and in lieu, the cause will be remanded for further proceedings.

Motion sustained; cause reversed and remanded.