THE KENT OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88743. Promulgated September 13, 1938.

*Ellis D. Bever, Esq.*, and *Vincent A. Smith, C. P. A.*, for the petitioner.

*James C. Maddox, Esq.*, for the respondent.

OPINION.

SMITH: It is the petitioner's contention in this proceeding that the payment to it on January 31, 1934, of $15,267.21, representing the amount of the earned surplus of the Jayhawk Oil Co., was a taxable dividend, deductible by it from gross income under section 23 (p) of the Revenue Act of 1934, which provides for the deduction from gross income of "the amount received as dividends from a domestic corporation which is subject to taxation under this title."

The respondent, on the other hand, contends that there was a liquidation of the Jayhawk Oil Co. on or about January 31, 1934, and that the payment of the dividend above referred to was merely a step in effecting that liquidation. The provisions of the statute relied upon by the respondent are embodied in section 115 of the Revenue Act of 1934, which provides in material part as follows:

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this title (except in section 203 (a) (4) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders,

532

whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

(b) SOURCE OF DISTRIBUTIONS.—For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * * *

(c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. * * *

* * * * * * *

(i) DEFINITION OF PARTIAL LIQUIDATION.—As used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

Article 115 (5) of Regulations 86, promulgated under the provisions of the Revenue Act of 1934, provides as follows:

*Distributions in liquidation.*—Amounts distributed in complete liquidation of a corporation are to be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation are to be treated as in part or full payment in exchange for the stock so canceled or redeemed. The phrase "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock. A complete cancellation or redemption of a part of the corporate stock may be accomplished, for example, by the complete retirement of all the shares of a particular preference or series, or by taking up all the old shares of a particular preference or series and issuing new shares to replace a portion thereof, or by the complete retirement of any part of the stock, whether or not pro rata among the shareholders.

In *Helvering* v. *General Utilities & Operating Co.* (C. C. A., 4th Cir.), 74 Fed. (2d) 972, the court said: "Where a plan of action is proven the courts will consider it as a whole rather than divide it into independent steps." A rule which is equally well established and is applicable to the facts in this case is that in matters of taxation the substance, rather than the form, will be regarded. See *United States* v. *Phellis*, 257 U. S. 156; *Phelps* v. *Commissioner* (C. C. A., 7th Cir.), 54 Fed. (2d) 289; certiorari denied, 285 U. S. 558; *Labrot* v. *Burnet*, 57 Fed. (2d) 413; *Reed* v. *United States* (C. C. A., 8th Cir.), 51 Fed. (2d) 941.

When the facts in this case are regarded in the light of the above rules, the real nature of what was done is immediately apparent. The petitioner liquidated the business of the Jayhawk Oil Co., receiving in exchange for its shares of stock all of the assets of that company. It turned over the corporate shell to third parties. The effect of the agreement of November 8, 1933, and the acts done thereunder amounted to a liquidation of the Jayhawk Oil Co. The transactions had pursuant to the agreement merely camouflaged the picture. In *Phelps* v. *Commissioner, supra,* it was stated:

That taxing statutes cannot be intentionally circumvented by anticipatory arrangements and contracts is settled by the principle laid down in *Lucas* v. *Earl*, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731. It is obvious that if the stockholders of the W. L. Phelps Company intended to, and in fact did, liquidate wholly or partially by distributing its assets to its stockholders and taking up their stock, the earnings and profits so received by them would be governed by section 201, supra. * * *

The petitioner contends that the dividend paid to it by the Jayhawk Oil Co. on January 31, 1934, was a taxable dividend within the purview of section 23 (p) of the Revenue Act of 1934. It was not an ordinary dividend within the meaning of the rule laid down in *Hellmich* v. *Hellman*, 18 Fed. (2d) 239; affd., 276 U. S. 233.

In our opinion the proceeding at bar is ruled by *Ward M. Canaday, Inc.*, 29 B. T. A. 355; affd. (C. C. A., 3d Cir.), 76 Fed. (2d) 278; certiorari denied, 296 U. S. 612. That case presented a situation very similar to the one here involved. There, as here, all the assets were turned over to the original stockholders. There, as here, the corporate shell was made the vehicle for a new business under new stockholders. The Board said in its opinion:

A full consideration of all of the facts in this case leads us, as it did the Commissioner, to the conclusion that all of the amounts distributed on December 26, 1928, were distributed in liquidation of the corporation. Although the Dealers Finance Co. was authorized to do a number of things under its charter, as theretofore amended, there can be no question as to the business in which it was actually and regularly engaged prior to March 1928. In March 1928 it disposed of all of its assets with which it had carried on that business and never thereafter engaged in that business. Cf. *James P. Gossett*, 22 B. T. A. 1279; affd., 59 Fed. (2d) 365; *Milton Tootle, Jr.*, 20 B. T. A. 892; affd., 58 Fed. (2d) 576. From that time until it made the distributions here in question, it carried on no business but limited its activities to the conversion into cash of some of the securities received in exchange for its former assets and to the retirement of its class B stock. Then came December 26, 1928, with the resolutions and distributions described above. Thereafter the corporation was dead so far as its old business was concerned, a mere empty shell without shareholders or property. Cf. *Rochester Ry. Co.* v. *Rochester*, 205 U. S. 236. Later, new stockholders refilled the shell with different property. The corporation then went into a new and totally different life. Its failure to dissolve is not inconsistent with our holding that the distributions were in liquidation of the corporation. *Frelmort Realty Corp., supra*. The facts here show that the corporation was in the course of liquidation at the time of the distribution and that it completed its liquidation on the same day. The distribution of the $500,509.69 was a step in that process. *Tecla M. Straub*, 29 B. T. A. 216. Cf. *Fred T. Wood*, 27 B. T. A. 162.

We are of the opinion that the respondent did not err in determining the deficiency in income tax for 1934 upon the basis that there was a liquidation of the Jayhawk Oil Co., and that the petitioner is taxable upon the gain realized therefrom.

*Judgment will be entered under Rule 50.*